Juanita JACKSON (Now Catlett),
Movant,

v.

Carl K. JACKSON, Respondent.

Supreme Court of Kentucky.

Nov. 3, 1981.

Rehearing Denied Feb. 16, 1982.

Patricia A. Lewis, Elizabethtown, for movant.

Thomas E. Cooper, Elizabethtown, for respondent.

STERNBERG, Justice.

The issue in this case is whether an antenuptial contract providing that the wife be furnished a decent support during her natural life is against public policy and therefore void. The trial court upheld the agreement and found that the sum of $300 per month under the facts of this case was a decent support. The Court of Appeals held that the subject agreement to provide decent support was contrary to the public policy of Kentucky and therefore void. We disagree with the Court of Appeals and concur in the judgment of the trial court.

Movant, Juanita Jackson, and respondent, Carl K. Jackson, were married on September 7, 1969, separated on December 1, 1978, and Carl filed a petition to dissolve the marriage in the circuit court of Hardin County, Kentucky, on January 8, 1979. We need to consider the status of the respective parties. Each of them had been married before. Juanita was a widow with an 11-year-old disabled son. Carl had a 33-year-old married son and a 27-year-old daughter. At the time of her marriage to Carl, Juanita worked as a receptionist in a dental office, as well as operated a large farm on which she had many head of cattle, much hay, corn and tobacco, and the usual farming equipment. Carl at that time managed a motel and restaurant in Glasgow, Kentucky. He left that employment and was hired to manage the restaurant at Holiday Inn, North, at Elizabethtown, Kentucky, where he earned about $15,000 per year exclusive of room and board. During the marriage Carl sold much of the farm equipment and pocketed the greater part of the money. Much of the cattle was sold for $11,000, of which Carl demanded and received about one-half. In 1971 Carl sold a piece of real estate he owned in Glasgow for $13,500, no part of which he gave to Juanita. The parties purchased a new pick-up truck, which was placed in Carl's name, in which, on December 1, 1978, Carl left Kentucky, taking with him about $30,000.

Prior to their marriage, the parties executed an antenuptial marital agreement in words and figures as follows:

"WHEREAS, marriage is about to take place between Juanita Thurman Catlett of R.F.D. 2, Sonora, LaRue County, Kentucky, and Carl Jackson of Glasgow, Barren County, Kentucky; this marriage contract between the parties hereto whose names are hereunto subscribed;

AND WHEREAS, they are desirous, before doing so, to establish their respective rights to each other's property;

The said Juanita Thurman Catlett agrees and binds herself to make no claim to dower or homestead or other distributable right, interest, or share in the real or personal property of said Carl Jackson, and hereby releases, relinquishes, and waives all claims to dower, homestead, or to other distributable right or share in the property, real or personal, of said Carl Jackson; Said Juanita Thurman Catlett agrees that said Carl Jackson shall have the exclusive right to the use and control of, and dispose of what property, real, personal or mixed, and of whatever nature said Carl Jackson has, before, during, or after the marriage, free from all claims of said Juanita Thurman Catlett, her heirs, administrators, executors and assigns;

And in consideration thereof the said Carl Jackson agrees and binds himself to make no claim to curtesy or homestead or other distributable right, interest, or share in the real or personal property of said Juanita Thurman Catlett, and hereby releases, relinquishes and waives all claims to curtesy, homestead, or to other distributable right or share in the property, real or personal, of said Juanita Thurman Catlett; Said Carl Jackson agrees that said Juanita Thurman Catlett shall have the exclusive right to the use and control of, and dispose of what property, real, personal or mixed, and of whatever nature said Juanita Thurman Catlett has, before, during, or after the marriage, free from all claims of said Carl Jackson, his heirs, administrators, executors and assigns. The said Carl Jackson is to furnish the said Juanita Thurman Catlett a decent support during his natural life."

It is to be noted that nowhere in this agreement is any reference made to a divorce or separation of the parties. The only reference in the agreement to support is the last sentence, and there is nothing in the agreement that would lead one to conclude that it was limited to a divorce or dissolution of the marriage of these parties. In substance, what Carl is saying by this sentence is that he will furnish his wife a decent living at all times.

The Court of Appeals predicated its conclusion on its determination that this support provision was directed at encouraging or inducing a separation of the parties or a dissolution of their marriage. It is hornbook law, as stated by Professor Ralph S. Petrilli, that,

" . . . Public policy embraces a vital interest in the preservation of marriage. Any provision that looks toward, provides for, facilitates, or tends to induce a separation or divorce after marriage is contrary to public policy and void. A provision for the payment of alimony or a property settlement should a separation and divorce occur after marriage is void and unenforceable. . . ." Kentucky Family Law, Husband and Wife, Sec. 13.8.

The Court of Appeals supported its conclusion with the case of *Stratton v. Wilson*, 170 Ky. 61, 185 S.W. 522 (1916). In *Stratton* this court held that "the law will not permit parties contemplating marriage to enter into a contract providing for, and looking to, future separation after marriage." The difficulty that this court has in fitting this particular case into the niche of the doctrine thus espoused is that we do not construe the subject agreement as looking toward, providing for, facilitating, or tending to induce a separation or divorce after marriage. We are of the opinion that in applying the general rule in this case the Court of Appeals has given *Stratton* too broad a reading. An expansion of this language to cover any situation in which provisions of an antenuptial agreement continue

after dissolution of marriage unreasonably stretches the *Stratton* holding.

■ *Stratton v. Wilson*, supra, presented facts in marked contrast to those present here. The agreement there specifically made separate provisions to take effect upon separation or divorce. Here, the agreement was made at arm's length and merely obligates the husband to furnish the wife "a decent support during his natural life." The obligation commenced upon marriage of the parties and does not depend upon a subsequent dissolution or separation. Such an incidental relationship, with a possible future dissolution of marriage, cannot be considered to violate the public policy against the encouragement of marital breakdown articulated in *Stratton*.

■ An agreement, such as the one in the case at bar, between two competent individuals made with full disclosure and in the absence of any fraud or overreaching may, without running afoul of public policy considerations, contain reasonable provisions for continuing support during and after the marriage. This conclusion leaves intact the decision in *Stratton*. As very recently noted in *Sousley v. Sousley*, Ky., 614 S.W.2d 942 (1981), this court remains "unwilling in this particular case to reconsider the policy and to overrule such a longstanding precedent." The decision today merely contains the *Stratton* rationale within reasonable bounds.

The Court of Appeals, after having determined that the provision of the subject antenuptial agreement for decent support was void as against public policy, considered its relation to the validity of the agreement as a whole. In doing so, it found that the provision for decent support was not severable from the contract as a whole and, therefore, the whole contract was void and unenforceable. In view of our finding that the subject contract is not void, we do not reach the question of severability.

The decision of the Court of Appeals is reversed, and the judgment of the Hardin Circuit Court is affirmed.

All concur.