In re Ferdinand J. BEDARD, a/k/a Fred Bedard and Lorraine Bedard; Ferdinard J. Bedard t/a Family Fair Hardware, Debtors.

Mohammed S. JAHANGER, M.D., Plaintiff,

v.

Ferdinand BEDARD and Lorraine Bedard, Defendants.

Bankruptcy No. 80–00525K.
Adv. No. 80–0612K.

United States Bankruptcy Court, E. D. Pennsylvania.

April 21, 1982.

Richard C. Sheehan, Audubon, Pa., for debtors/defendants.

Thomas L. Gowen, Norristown, Pa., for plaintiff.

Norman Ackerman, Philadelphia, Pa., trustee.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

This case comes before the Court on a complaint to determine dischargeability of a debt. The plaintiff alleges that one of the debtors, Ferdinand Bedard, induced the plaintiff to loan money to the debtors for use in their business. Because the statements by Mr. Bedard were allegedly false representations, the plaintiff asserts that the debt arising from this transaction should be excluded from discharge in bankruptcy. The Court, however, finds that this debt shall be dischargeable.[1]

The plaintiff, Dr. Jahanger, had been the Bedards' physician for several years prior to the loan transaction in 1975. The debtors owned and operated a hardware store under the name of Family Enterprises, Inc. Mr. Bedard frequently represented to the plaintiff that the business was doing very well. Typical of his statements are the following:

1. That Family Enterprises was doing very well, with over a half million dollars in sales volume per year.

2. That defendant corporation was earning $30,000 to $40,000 a year profit on the screen window business alone.

3. That next year (1976) he expected that the defendant corporation would make even more money than in the present year (1975).

4. That the business was doing so well he was going to open another store in Douglassville.

It is uncontested that Mr. Bedard made these statements. The doctor, with these representations in mind, gave the debtors $25,000 to use in their business. A written agreement, drafted by the plaintiff's attorney, was signed by the parties on April 29, 1975. This agreement provided for a lump sum repayment of $25,000 by the debtors in five years. In lieu of interest, the doctor was to receive 20% of the net annual profits of the business.

The business, however, operated at a loss. No profits were available to pay the doctor. Nor have the Bedards made the lump sum repayment. A payment of $1,500 has been made to the plaintiff, and additionally, three $5,000 checks were issued to him. All three checks were returned to the plaintiff by the bank for having insufficient funds in the account. The plaintiff brought suit in state court based on violations of the Pennsylvania Securities Act. 70 P.S. § 1–101 *et seq.* (Purdon). Before the case was reached for trial, the debtors filed a voluntary joint petition under chapter 7 of the Bankruptcy Code on March 12, 1980.

In October of 1980, a complaint to determine dischargeability of the debt was filed in the Bankruptcy Court. Counsel for the debtors filed a motion for summary judgment. After hearing argument and consideration of briefs, the Court denied summary judgment. Trial was held in January of 1982. After the plaintiff had presented his case and rested, defendants again moved for summary judgment. The Court took the case under advisement.

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

The issue raised by the complaint is whether the debtors' liability to the doctor should be discharged in bankruptcy. The Bankruptcy Code provides that a variety of debts are excepted from discharge. *See* 11 U.S.C. § 523(a). Plaintiff alleges that the obligation in this case is excluded from discharge under § 523(a)(2) of the Code. Subsection (A) of this provision provides that a debtor will not be discharged from any debt:

> (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
>> (A) false pretenses, a false representation, or actual fraud, *other than a statement respecting the debtor's or an insider's financial condition.* . . .

11 U.S.C. § 523(a) (emphasis added). The statements in this case do not fall under this section. The provision expressly excludes statements pertaining to financial condition. Statements of financial condition are within the purview of subsection (B) of § 523(a)(2). Subsection (B) is substantially different from subsection (A). Chief among these differences is that a statement of financial condition must be in writing in order to have the underlying claim determined to be non-dischargeable.[2]

There is no question that the debtors obtained money from the plaintiff. Furthermore, the plaintiff advanced these funds on the basis of oral representations. An examination of these statements shows that all representations related to the financial condition of the business, which was a corporation. The business in this case is an "insider". The definition of the term "insider" includes a corporation, if the debtor is an individual and a person in control of the corporation. 11 U.S.C. § 101(25). There is no doubt that the Bedards controlled Family Enterprises, Inc. The corporation, therefore, is a statutory insider. The representations in this case all concerned the financial condition of this insider. As a result, the claim in this case is expressly excluded from § 523(a)(2)(A) and cannot be declared non-dischargeable under this provision.

As previously mentioned, misrepresentation of financial condition is covered by § 523(a)(2)(B). Furthermore, such a misrepresentation of financial condition must be in writing if the underlying claim is to be excepted from discharge.[3] In his brief, counsel for the plaintiff cites several cases in support of his contention that the writing requirement does not apply in this case.[4] This reliance, however, is misplaced. All of these cases were decided under § 17(a)(2) of the now-repealed Bankruptcy Act of 1898.[5] The limited circumstances under which the Bankruptcy Act imposed a writing requirement have been expanded by the new Bankruptcy Code.[6]

Even if the Court, by some judicial magic, could waive the writing requirement, the plaintiff could not prevail. Section 523(a)(2)(B) requires that the creditor must have reasonably relied on the misrepresentation. 11 U.S.C. § 523(a)(2)(B)(iii). In this case, the reliance by the plaintiff is anything but reasonable. The testimony clearly shows that the plaintiff never asked for financial details of the enterprise in which he was investing. Nor did he ever

---

2. Subsection (B) provides that a debtor will not be discharged from any debt:
   (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
   (B) use of a statement in writing—

   . . . . .

   (ii) respecting the debtor's or an insider's financial condition; . . .

3. *See* note 2, *supra.*

4. *In re Ketter,* 1 B.R. 510 (D.C.E.D.Wis.1979); *In the Matter of Matera,* 592 F.2d 378 (7th Cir. 1979).

5. Act of July 1, 1898, ch. 541, 30 Stat. 544 (1898) (repealed by Act of Nov. 6, 1978, Pub. L.No. 95–598, 92 Stat. 2549 (1978)).

6. Under the Act, the writing requirement only applied to " . . . obtaining money or property on credit or obtaining an extension or renewal of credit. . . .". § 17(a)(2). These restrictions have been removed by the Code. 11 U.S.C. § 523(a)(2)(B).

request a written financial statement. Furthermore, the evidence shows the plaintiff to have been represented by counsel who urged him not to enter into this transaction. The doctor failed to heed this prudent advice.

The Court understands the plaintiff's frustration. He has lost a large sum of money. However, there were means of protecting himself which he chose to ignore. Summary judgment was originally denied by the Court in order to grant the plaintiff a full and complete opportunity to present his case. The plaintiff, however, is unable to prove that this debt should be excluded from discharge.

An appropriate Order will be entered.