In re James Carlos DAVIS, Ronald Edward Miller, Norma Faye Miller, Floyd Channel, Debtors.

Robert ELMORE, Administrator of the Estate of Kevin Elmore and James Franklin Elmore, Plaintiff,

v.

James Carlos DAVIS, Defendant.

James A. TABB and Jim Tabb Corporation, Plaintiff,

v.

Ronald Edward MILLER, Norma Faye Miller, Defendants.

Dorothy CHANNEL, Plaintiff,

v.

Floyd CHANNEL, Defendant.

Bankruptcy Nos. 18100375, 18100487 and 18200016.
Adv. Nos. 1820002, 1820010 and 1820026.

United States Bankruptcy Court,
W. D. Kentucky.

Oct. 1, 1982.

C. Randall Michel, Bowling Green, Ky., for plaintiff.

G. D. Milliken, Jr., Bowling Green, Ky., for defendant.

## SUPPLEMENTAL MEMORANDUM

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

In three decisions, 23 B.R. 638, 636, and 633, today we act to avoid the retrial in bankruptcy court of matters which have been fully litigated and substantially adjudicated in other courts. Our medium in reaching the result is the doctrine of collateral estoppel. That doctrine, as we will explain, has been given rejuvenated utility by the Supreme Court's recent holding in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*[1]

Although the three cases involve different theories of bankruptcy law and arrive at different substantive results, we have employed the same legal concept in concluding that full evidentiary hearings are not justified. The cases are consolidated for discussion in this memorandum to permit a broader statement of what we perceive to be their shared legal principle.[2]

1. *Elmore v. Davis* comes to us, ironically, from the United States District Court for the Western District of Kentucky, the same court to which our decisions are directly appealable. Elmore sued Davis, a sheriff, for violation of federally protected civil rights. The damage suit arose out of an armed confrontation between Davis and his deputies and members of the Elmore family, one of whom was killed.

After a three-day trial, a jury assessed actual damages against Davis in the amount of $112,696.33. No punitive damages were awarded. The jury had been properly instructed that:

> If the jury ... should further find that the act or omission of the Defendants which proximately caused actual injury or damage to the Plaintiffs was malicious, wanton or oppressively done, then the jury may, if in the exercise of discretion they unanimously choose to do so, add to the award of actual damages such amount as the jury shall unanimously agree to be proper, as punitive and exemplary damages.

The district court jury was supplied with a definition of "willful and malicious" which meshes precisely with the standard employed by this court in making that factual determination in nondischargeability proceedings. The resulting judgment against Davis was not appealed.

Davis filed bankruptcy. Elmore then brought a complaint against Davis in this court, alleging that the judgment should be enforceable notwithstanding the bankrupt-

1. —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

2. Separate findings of fact and conclusions of law will be entered in each case.

cy because it was based on a "willful and malicious injury" of the sort rendered non-dischargeable by Section 523(a)(6) of the Bankruptcy Code. We are asked to conduct a trial on that issue.

2. *Tabb v. Miller* involves a state court action in which Miller was found by a jury to have wrongfully conveyed title to real estate owned by Tabb. The trial transcript runs to hundreds of pages. Judgment was entered against Miller in the amount of $69,585. The trial judge, in his findings of fact and rulings of law, clearly described (1) the existence of a fiduciary relationship between the two, (2) a breach of that duty, and (3) resulting damage to Tabb. The judgment was not appealed.

Miller filed bankruptcy. Tabb's complaint in this court alleges that the judgment debt derived from "fraud or defalcation while acting in a fiduciary capacity" and is therefore barred from discharge under Section 523(a)(4) of the Code. Miller seeks a full trial on that question of fact.

3. *Channel v. Channel* originated with the dissolution of the marriage of Floyd and Dorothy Channel by the Circuit Court of St. Louis County, Missouri, in 1981. The decree of that court provided that "maintenance is waived by both parties" and that the husband was to pay to the wife "the sum of $13,489.02 which is her one-half share of the net proceeds of the sale of the family home ..."

Floyd Channel filed bankruptcy. Dorothy Channel's complaint characterizes the $13,489.02 amount as a nondischargeable "maintenance" obligation. She requests a trial at which testimony presumably would be offered contrary to the language of the Missouri judgment.

\*   \*   \*   \*   \*   \*

The doctrine of collateral estoppel is an invention of the common law for preventing duplicative litigation and encouraging the finality of justice. It holds, essentially, that once issues of fact and law between opposing parties have been fully and fairly litigated and substantially adjudicated, those parties should be estopped from relitigating those issues before another court.[3] The genius of the rule is its doctrinal reach across jurisdictional boundaries in a federal system which by its nature, absent such a rule, could host virtually endless litigation over the same point in controversy.

In bankruptcy courts, the doctrine was substantially ameliorated by the 1970 amendments to the Bankruptcy Act, and further by passage of the Dischargeability Act of 1970. That legislation gave bankruptcy courts the power not only to grant discharges, but to determine their legal effect. Theretofore, as a general rule, once a discharge in bankruptcy had been granted it was available to the bankrupt as an affirmative defense in other court proceedings, which would in turn judicially interpret the effect of the discharge.

This broad grant of exclusive jurisdiction was used by activist bankruptcy courts to retry matters already litigated elsewhere, with a resulting significant erosion of the doctrine of collateral estoppel. With dischargeability characterized as an independent legal issue, even though the underlying fact issues were the same, the points of jurisdictional conflict between bankruptcy courts and other federal and state courts increased. Unsuccessful litigants began to turn to bankruptcy judges as the functional equivalent of state appellate courts.

Because of these historical developments, and particularly since passage of the Bankruptcy Reform Act of 1978, this court has been led, more than a little grudgingly, away from strict respect for the collateral estoppel rule. We have conducted retrials on fact questions where earlier state court judgments were in the nature of default decrees,[4] and where an essential fact in issue involved an element of subjective intent—fraud or malice, for example—which is best fathomed in the courtroom and before the eyes of the trier of fact.

**3.** *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

**4.** *Tice v. Johnson,* BK 77–01048–L, Aug. 18, 1978 (unreported).

Even while reluctantly flexing our lengthened jurisdictional reach, however, we have consistently deferred in state law questions "to our state court brethren and their established expertise in such matters."[5] And in reviewing a prior adjudication on fact questions resurrected in this court, we take it as a first principle that: "If the judgment substantially embodies those elements that enable us to form an opinion as to the dischargeability of the debt we would be disinclined to order the matter relitigated."[6]

*Marathon Pipe Line,* supra, by now committed to memory and studied more for its questions than for its answers by bankruptcy specialists and constitutional theorists alike, has brought to our courts not only a sense of restored humility but a renewed encouragement of the collateral estoppel rule.

The plurality opinion in Marathon Pipe Line directly revoked the exercise by bankruptcy courts, acting as adjuncts of the district courts, of "the essential attributes" of Article III judicial power. There can be, in our view, no more "essential attribute" of judicial power than that of reviewing the adequacy of the exercise of the juridic functions by other judges. That, in deciding whether to invoke the doctrine of collateral estoppel, and in many instances deciding against it, is exactly what we have been doing. It is a judicial practice from which, given the message of *Marathon Pipe Line* and the Congressional inaction evident at this writing, we should and will, wherever possible, recede.

*Marathon Pipe Line* went further than divesting this adjunct court of "essential" judicial attributes. The concurring opinion of Justices Rehnquist and O'Connor raises primary federalism concerns in questioning our authority to rule on what are quintessentially state law claims, "only because the plaintiff has previously filed a petition for reorganization . . ."[7]

Given the natural tension that will always exist between private rights conferred by state law and the right to avoid the corresponding duties under federal bankruptcy law, it will be impossible for this court to ever be freed of those federalism questions raised by the concurring Justices, regardless of what form our jurisdictional restructuring will take. But for this time being, and certainly even after the bankruptcy system is recast in constitutional form, we should heed the lessons of respect for other courts implicit in *Marathon Pipe Line.* One measure of our respect is renewed attention to the doctrine of collateral estoppel and its benign protection of prior state and federal court judgments.

5. *In re Graham,* 14 B.R. 246, 248 (Bkrtcy.W.D. Ky.1981).

6. *In re Cooney,* 8 B.R. 96, 100 (Bkrtcy.W.D.Ky. 1980).

7. Supra note 1, concurring opinion, —— U.S: at p. ——, 102 S.Ct. at 2881.