**In re Carl Kenneth JACKSON, Debtor.**

**Juanita CATLETT, Plaintiff,**

v.

**Carl Kenneth JACKSON, Defendant.**

Bankruptcy No. 4–82–00257.
Adv. No. 4–82–0048.

United States Bankruptcy Court,
W.D. Kentucky.

March 2, 1983.

Thomas E. Cooper, Elizabethtown, Ky., Rhonda Taylor, Owensboro, Ky., for defendant.

Patricia A. Lewis, Elizabethtown, Ky., for plaintiff.

## MEMORANDUM

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

On curious facts unlikely to be seen again soon before this court, we are asked to consider the enforceability of an antenuptial agreement providing for lifetime support to his wife, after divorce and the bankruptcy of the husband. We hold that the support obligation survives the former husband's bankruptcy discharge.

Juanita and Carl Jackson were married in 1969. Because each had children from previous marriages and owned substantial properties, they signed a premarital agreement which provided in pertinent part that "... Carl Jackson is to furnish the said Juanita Catlett a decent support during his natural life."

"It is to be noted," the Kentucky Supreme Court was later to remark, "that nowhere in this agreement is any reference made to a divorce or separation of the parties. The only reference in the agreement to support is the last sentence, and there is nothing in the agreement that would lead one to conclude that it was limited to a

divorce or dissolution of the marriage of these parties."[1]

In 1978 Carl Jackson left the state with a new pickup truck and $30,000 in cash from the liquidation of properties in which Juanita had an interest.

In the ensuing divorce action the Hardin Circuit Court gave meaning to the "decent support" agreement by requiring Carl to pay Juanita "the sum of $300 per month hereafter during his natural life, or the natural life of the respondent (sic) whichever is the shorter."

The Court of Appeals reversed on public policy grounds, holding that antenuptial agreements for lifetime support are void because they encourage divorce. Although unspoken, the Court of Appeals also may have considered the point that if a man is to be held to a duty which is to last until his death or his former wife's death, he might be encouraged to accelerate the latter eventuality.

On discretionary review the Supreme Court of Kentucky reversed its intermediate appellate court, thus reinstating the judgment of the Hardin Circuit Court. The trial court, during and after the appellate process, entered additional orders in the case holding Carl in contempt, ordering his arrest, and entering a money judgment of $7,142 for the unpaid arrearage under its earlier decree.

The last mentioned judgment was entered on June 15, 1982. Fourteen days later Carl Jackson's bankruptcy petition was filed.

The former wife, now known as Juanita Catlett, timely filed a complaint to have the support obligation declared nondischargeable under the appropriate statutory exception, 11 U.S.C. 523(a)(5). During the course of a telephonic pretrial conference it was determined that there was no material issue of fact justifying an evidentiary hearing and that the matter could stand under submission on the basis of the pleadings and exhibits thereto.

From the state court orders made a part of this record it is clear that a summary disposition of this dispute is appropriate.

Section 523(a)(5) of the Bankruptcy Code excludes from a discharge any debt "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of both spouse or child, *in connection with a separation agreement, divorce decree,* or property settlement ..." (Emphasis supplied).

The sole question before us is whether the premarital promise of lifetime support is "in connection with" a separation agreement or divorce decree, thus bringing it within the statutory exception. We conclude that it is.

The premarital agreement, calling as it did only for "decent support," was without operative content as between the estranged parties. True meaning was given to the nebulous clause only by the Hardin Circuit Court, which reduced the obligation to the certain figure of $300 per month. In that particular the Hardin decree is not only "connected with," but in fact *creates* the indebtedness with which we are here concerned.

Carl Jackson's only affirmative defense is that "any monetary obligation is a contract obligation." Such reasoning would lead us to conclude, we assume, that a contract of marriage gives rise not to a marriage, but to a contract. We have in similar cases been required to dispose of such unfortunate vapidity:

> Counsel for defendant seeks comfort in repeated use of the terms "common law liability" and "common law judgment," as if to change the nature of the obligation. A "common law judgment" it may be, but it is also "in connection with" the divorce decree, which brings it within the terms of Sec. 523(2)(5) of the Bankruptcy Code.[2]

Obviously, we are here concerned with a "contract obligation," but the Hardin Cir-

---

1. *Jackson v. Jackson,* 626 S.W.2d 630 (Ky.,1981).

2. *Beauchamp v. Graham,* 14 B.R. 246, 248 (Bkrtcy.Ky., 1981).

cuit Court order compelling its performance provides its "connection with" the divorce decree. That order, ultimately vindicated on appeal, must be permitted to stand undisturbed by any further contrary interpretation by this court.

The Kentucky Supreme Court, in upholding the order, admittedly made some fine and even labored distinctions of the case before it within the body of state case law concerning antenuptial agreements. The circumstances of *Jackson v. Jackson* were aggravated enough to provoke the hand of equity, and it is even arguable that this hard case made bad state law. But for our narrow purpose it is enough to say that the opinion was crafted by one of Kentucky's preeminent jurists in the domestic relations field and is the final statement of law on the subject.

The doctrine of collateral estoppel precludes our characterization of the $300 per month debt in question as anything other than a support obligation in connection with a divorce decree, enforceable against the former husband and nondischargeable in bankruptcy. See *In re Davis*, 23 B.R. 639 (Bkrtcy.W.D.Ky.1982). To the extent that the debt is for support, related attorneys fees also are nondischargeable.[3]

That characterization of the debt has, however, its factual outer limits. The most recent Hardin Circuit Court order in the Jackson case, awarding judgment for $7,142 "representing arrearage for maintenance *and property settlement provisions,*" does not apportion the amount awarded between (1) maintenance and (2) property settlement. Such an apportionment, essential to a proper ruling by this court on the dischargeability question, is within the particular province of the state court whose rulings we are asked to interpret. For that reason the automatic stay should be lifted, as prayed for in the complaint, to permit the parties to reduce that question to a final determination by Hardin Circuit Court. An order to accomplish that purpose shall be entered today.

**3.** *Pauley v. Spong,* 661 F.2d 6 (2d Cir.1981); *In the Matter of Romeo,* 16 B.R. 531 (Bkrtcy.D.N. J.1981).