In re Jerold A. **DETLING**, Debtor.

Claudia J. **DETLING**, Plaintiff,

v.

Jerold A. **DETLING**, Defendant.

Bankruptcy No. 81–00008.
Adv. No. 81–0160.

United States Bankruptcy Court,
N.D. Iowa.

March 4, 1983.

**470**

Gregory D. Kingery, Cedar Rapids, Iowa, for plaintiff.

Brian C. McGraw, Cedar Rapids, Iowa, for defendant.

Findings of Fact, Conclusions of Law, and ORDER Denying § 523 Complaint, with Memorandum

WILLIAM W. THINNES, Bankruptcy Judge.

The matter before this Court is the Plaintiff's § 523 dischargeability complaint regarding certain debts stemming from a dissolution decree dissolving the marriage between Plaintiff and Defendant. Upon proper notice to all interested parties, trial was held on this matter January 11, 1983. Appearing on behalf of the Plaintiff was Attorney Gregory D. Kingery and for the Defendant, Attorney Brian C. McGraw. Testimony was taken and Plaintiff's Exhibits A–L offered and received into evidence subject to the objections of the Defendant regarding Exhibits D, E, and J. The matter was submitted, and taken under advisement by the Court.

The Court, being fully advised, now makes the following Findings of Fact, Conclusions of Law, and Orders.

### FINDINGS OF FACT

The present controversy stems from a Decree of Dissolution, entered in Linn County, Iowa, on April 15, 1980, dissolving the marriage between Plaintiff, Claudia J. Detling, and Defendant, Jerold A. Detling. That original dissolution decree contains only one provision that is relevant to these proceedings, to-wit:

A deferred property settlement in the amount of $6,000.00 in favor of Claudia J. Detling bearing interest at the rate of 9 percent.

The Plaintiff has not disputed that the debt created by the original decree was in the nature of a property settlement. The original decree incorporated a stipulation entered into between the parties regarding various duties and obligations to be performed by each. The provision in that stipulation relevant to this proceeding is Paragraph 14, in which the parties agreed that each would keep his or her own retirement plan. The Plaintiff claims that she was induced to make this agreement because the Defendant had failed to list on his Affidavit of Financial Status the value of his profit-sharing pension plan. At that time, the Defendant's vested rights in said pension plan had a value of approximately $6,000.00. The Defendant maintains that he was not aware his plan was vested and that he believed the plan had no value.

In December of 1980, the Plaintiff herein sought a modification of the original decree issued April 15, 1980. In connection with that modification proceeding the Defendant filed Affidavits of Financial Status with the State Court in Linn County. The Defendant has admitted that those financial statements were incorrect at the time that they were filed, but maintains that he was unaware of the errors until several months later. Also in connection with the December, 1980, modification proceedings, the Plaintiff and Defendant entered into a stipulation agreement which specified certain rights and duties, but did not purport to change the original decree with respect to the original property settlement award. Plaintiff maintains that if she had known the Defendant's true financial status, she would have asked the Linn County District Court to modify the property settlement of

the original decree, along with the other issues that were to be decided in the modification proceedings.

On January 14, 1981, the Defendant filed a Chapter 7 Petition in this Court, and received a Discharge of all dischargeable debts by Order of this Court issued April 8, 1981.

The original dissolution decree had provided that the Defendant would retain the residence located at Rural Route 3 in Central City, which was being purchased on contract from Mr. and Mrs. Edgerly. That property was also mortgaged to Farmers State Bank as security for an obligation signed by both the Defendant and the Plaintiff before their dissolution. The December, 1980, Modification did not alter this provision. On March 30, 1981, the Defendant deeded his interest in the house at Rural Route 3, Central City, to the Farmers State Bank apparently in satisfaction of the debt owing to Farmers State Bank, and also apparently because of Defendant's inability to make payments to Farmers State Bank, and to the Edgerlys on the real estate installment contract. On April 3, 1981, the Plaintiff commenced this adversary proceeding claiming that the Defendant's debt, owing to her as a result of the original dissolution decree, was not dischargeable pursuant to Bankruptcy Code § 523(a)(5). That complaint was subsequently amended to include claims under § 523(a)(2). On July 1, 1981, the Plaintiff herein, Claudia J. Detling, filed an application with the state court to modify the Decree of Dissolution originally entered on April 15, 1980, and modified in December of 1980. Her claim for modification was based on an allegation that the Defendant herein, Jerold A. Detling, had committed fraud, causing an inequitable property division in the original Decree of Dissolution. This Court ordered Plaintiff's § 523 dischargeability complaint continued until the state court issued a ruling on the application for modification. On April 9, 1982, a final order was issued in the state court proceedings, modifying the original Decree to the extent that Plaintiff herein, Claudia J. Detling, would share in one-half of the pension plan of Defendant herein, Jerold A. Detling, as valued at the time of the original Decree. That amount was approximately $3,000.00. Judge Eads' ruling thus establishes the amount of damages, or the property that was obtained by the Defendant/Jerold A. Detling as a result of failing to list his pension plan. This Court must now decide whether that property was obtained in a manner proscribed by § 523.

At the January 11, 1983, trial on this matter, the Plaintiff stipulated that the debt owed by the Defendant is a property settlement. The Defendant admitted that he had failed to include the value of his profit-sharing pension plan on any Affidavits of Financial Status that had been filed in the State Court dissolution proceedings. The Defendant also admitted that there were some errors in the Statements of Assets that he gave at various stages of the proceedings for modification of the dissolution decree. In all cases where there were errors in the financial statements given by the defendant, he has strenuously asserted that such errors were due to mistakes in understanding or in valuation of his property. The Plaintiff has also accused the Defendant of making false representations regarding his failure to make payments on the residence at Rural Route 3, Central City. The Defendant has denied making any such representations regarding his payments on the house.

After taking extensive testimony in the state court proceedings, Judge Eads made a finding of fact that neither the Plaintiff nor the Defendant herein knew that the Defendant's retirement plan was vested at the time the Decree of Dissolution was entered. Judge Eads concluded that "at worst, both parties were mutually mistaken." This Court finds that no clear evidence has been presented which would warrant disturbing Judge Eads' findings.

## CONCLUSIONS OF LAW

1. Plaintiff's Exhibits D, E & J are relevant evidence in this proceeding and should be admitted into evidence.

2. The $6,000.00 award in the initial dissolution decree of April 15, 1980, and the approximately $3,000.00 adjustment in that award, pursuant to Supplemental Decree of April 9, 1982, are both property settlements and thus dischargeable under § 523(a)(5).

3. Any errors in the Defendant's Affidavits of Financial Status filed for the initial decree and for the subsequent modification of that initial decree were the result of mistake, and therefore were not made with the intent to deceive necessary under § 523(a)(2)(B).

4. The Plaintiff has not shown by clear and convincing evidence, necessary to sustain a claim under § 523(a)(2)(A), that the Defendant made false representations, that any false representations made by the Defendant were made with the intent to deceive, or that she reasonably relied on any such representations.

## ORDERS

IT IS ORDERED that Defendant's objections to admission of Plaintiff's Exhibits D, E and J are hereby overruled, and the Exhibits are admitted.

IT IS FURTHER ORDERED that the Plaintiff's Objections to dischargeability be denied, and that her § 523 dischargeability complaint be dismissed.

IT IS FURTHER ORDERED that the debt owed by the Defendant to the Plaintiff be included in the effect of any discharge granted by this Court.

## MEMORANDUM

The Plaintiff's Complaint raises three major issues. Her claim for nondischargeability of the debt under § 523(a)(5) may be dismissed without further comment because the Plaintiff has stipulated that the debt owed is a property settlement award. The Court then is left to decide whether certain alleged false representations are sufficient to sustain a claim under § 523(a)(2)(A), and whether certain alleged false financial statements are sufficient to sustain a claim under § 523(a)(2)(B). For the reasons analyzed in more detail below, it will be seen that Plaintiff has failed to prove by clear and convincing evidence all the elements necessary to sustain a claim under either subsection (A) or subsection (B) of § 523(a)(2). She has not proven that the alleged misrepresentations occurred, or that she reasonably relied on any written or oral statements that were made. In addition, she has failed to convince the Court that the Defendant intended to deceive her by his use of any statements that were false or that her reliance on those statements was reasonable.

The initial question that must be answered for any § 523(a)(2) dischargeability complaint is whether the debtor actually *obtained* any money, property, services, etc. To that end, this Court halted proceedings on this Complaint until the State Court had issued a final ruling in its proceedings to determine whether the initial property settlement would have been different had all the facts been before the Court at that time. It seems appropriate that the Bankruptcy Court would defer to the State Court on this issue, since the State Court is in a better position to decide what the Debtor gained by not making a full disclosure of his assets. *See,* 28 U.S.C. § 1471(d); *See also,* 3 *Collier,* ¶ 3.01(f). If the State Court had determined that the Debtor did not obtain money, property, or services, then no further investigation into the nature of the financial statements would have been necessary. The State Court did, however, find that the Plaintiff herein, Claudia J. Detling, should have been awarded approximately $3,000.00 more than what she initially received. To that extent, the Debtor obtained $3,000.00 by use of a false financial statement.

Having determined that the Defendant/Gerald A. Detling did obtain property in the amount of approximately $3,000.00, the Court must now determine whether any of the proscriptions of § 523(a)(2)(A) or § 523(a)(2)(B) were violated. Under § 523(a)(2)(A) the Plaintiff has alleged two separate actions which constitute false representations, false pretenses, or actual fraud. Under § 523(a)(2)(B), the

Plaintiff has also alleged two separate instances of false financial statements being given by the Defendant.

## SECTION 523(a)(2)(A)

The Plaintiff's first allegation of false representation is that in September of 1979, prior to the initial dissolution decree, the Defendant told her his profit-sharing pension plan had no value. The Plaintiff contends that if she had known the plan did have value at that time, she would not have agreed to the stipulation which became part of the original dissolution decree. The Defendant claimed the conversation did not take place until May of 1981. Irrespective of when the conversation took place, there are several reasons why it cannot support Plaintiff's claim under § 523(a)(2)(A).

First, it appears to the Court that this particular allegation of false representation is one that concerns Defendant's financial condition. *See,* 3 *Collier,* ¶ 523.08 at 523–34.1 to 35. As such, it must be in writing to be proscribed by § 523(a)(2). Section 523(a)(2) divides all statements into two mutually exclusive categories. Statements that respect the debtor's financial condition are governed by subsection (B). Representations that do not respect the debtor's financial condition must be considered under subsection (A). *In re Bedard,* 19 B.R. 565 (Bkrtcy.E.D.Pa.1982); 3 *Collier on Bankruptcy,* ¶ 523.08 (15th ed. 1982).

■ Even if the Plaintiff could show that the statement in question was of a type amenable to analysis under § 523(a)(2)(A), she would still need to show that the misrepresentations involved moral turpitude or intentional wrong. *In re Alvarez,* 13 B.R. 571 (Bkrtcy.S.D.FL 1981); *see,* 3 *Collier* § 523.08, at 523–40. That is, it must appear that the representations were knowingly false and were made with the intent to deceive, and that they were relied upon by the defrauded creditor. *Id.* at 523–41 to 42; *see In re Crook,* 13 B.R. 794, 799 (Bkrtcy.D.Maine 1981). The Plaintiff testified that she relied on the Defendant's statement that his pension plan had no value, but the Court is unconvinced that it was reasonable for the Plaintiff to rely on that

representation. She certainly had at her disposal other reliable means of determining whether the Defendant's pension plan was actually vested. *See, Matter of Breen,* 13 B.R. 965, 969 (Bkrtcy.S.D.OH 1981) (for reliance to be reasonable, cannot rely merely on debtor's statement); *Matter of Shepherd,* 13 B.R. 367, 370 (Bkrtcy.S.D.OH 1981) (ordinary prudence must be used to guard against false representations). In addition, Plaintiff has not offered any evidence to show that the Defendant knew his statement regarding his pension plan was false, *see,* 3 *Collier,* ¶ 523.08 at 523–40 to 41; *see also,* 3 *Collier,* ¶ 523.09; nor did the Plaintiff show that the Defendant intended to deceive her by making such a statement. More importantly, the state court specifically found that there was no fraud involved, but rather that both the Plaintiff and Defendant were mistaken in assuming that the plan had no value. It appears to the Court, therefore, that the Plaintiff could not prevail even if her burden of proof were a mere preponderance of the evidence. The burden is greater, however, because she must prove each element of her case by clear and convincing evidence. *In re Drewett,* 13 B.R. 877, 879 (Bkrtcy.E.D.PA 1981). The Plaintiff has certainly failed to meet that standard, and thus her complaint cannot stand on this particular allegation of false representations or false pretenses.

The Plaintiff's second allegation regarding false representations or false pretenses is that prior to the modification proceedings, the Defendant informed her that he was "taking care of the house payments," but that he did not actually make those payments. The Plaintiff claims that this statement caused her to not seek a modification of the property settlement award at the time other matters were pending in the dissolution modification proceedings. Most of the deficiencies in the Plaintiff's first claim are present also in the second. Additionally, the Defendant has denied ever making the statement to the Plaintiff.

The reasonableness of the Plaintiff's reliance on this statement seems particularly suspect, because of the vague nature of the statement. Additionally, the Plaintiff has

offered no evidence regarding the Defendant's intent to deceive by making this statement, if it was made. Also, the Plaintiff has presented, at best, confusing evidence regarding the truth or falsity of the statement at the time it was made.

Given that the Court can find no compelling reason to believe the testimony of the Plaintiff more than that of the Defendant, it appears again that the Plaintiff could not succeed even if her burden were a mere preponderance of the evidence. Because her burden is the more onerous one of clear and convincing evidence, her claim certainly cannot be sustained.

SECTION 523(a)(2)(B)

The Plaintiff's first claim under this section is that the Defendant's Affidavit of Financial Status filed in connection with the original dissolution proceedings was false because it failed to include the Defendant's profit-sharing pension plan as an asset. This claim cannot be sustained under § 523(a)(2)(B) for many of the same reasons enumerated in the analysis of the Plaintiff's first claim under § 523(a)(2)(A).

First, and most importantly, the state court has determined that there was no fraud involved in the filing of this statement. Judge Eads, after hearing extensive testimony, found that the pension plan was not listed as an asset because both parties had the mistaken belief that the plan had no value. While that decision may not be binding on this Court, the limited testimony that was presented on January 11, 1983, did not provide any reason to disturb Judge Eads' findings. *See, e.g., In re Davis,* 23 B.R. 639, 641 (Bkrtcy.W.D.KY 1982).

In addition, the Plaintiff has offered no evidence as to the reasonableness of her reliance on the Defendant's financial affidavit. Plaintiff's own testimony gives the impression that she had some reason to doubt that the Defendant's pension plan had no value. If Plaintiff did have such doubts, it was surely unreasonable for her to rely on Defendant's financial affidavit as proof that the plan had no value. *See Matter of Breen,* 13 B.R. at 969. The Plaintiff had the burden to prove by clear and convincing evidence that her reliance on

this omission was reasonable, and her bare statement that she did rely is not sufficient to convince this Court that her reliance was reasonable.

The Plaintiff's second claim is that the Defendant, at the time modification of the original decree was sought, filed a financial affidavit which again failed to list his pension plan and, in addition, listed as an expense house payments which the Defendant was not making. The Plaintiff claims that this Financial Affidavit caused her to assume that the house payments were being made, and that if she had known such payments were not being made, she would have sought a modification of the property settlement during that December, 1980, modification proceeding so that her original property settlement award might be protected. The Plaintiff's claim based on this particular allegation cannot stand because it suffers most, if not all, of the infirmities of the previous claims.

First, it is not clear that the statement is actually false, at least to the extent that the Defendant listed the house payment as an expense. It is undisputed that the Defendant did owe house payments and it appears to the Court on the evidence presented that the Defendant was making a good faith effort to pay those house payments. The omission of the pension plan from the list of assets, however, probably was a false statement.

Assuming that the statement was false in some material aspect, it is far from clear what was *obtained* from the Plaintiff by filing this financial statement. If the Plaintiff was induced to forego an equitable remedy she might have had, such a forebearance of action does not appear to fit any of the categories of § 523(a)(2) which require the obtaining of money, property, services or the extension, renewal, or refinancing of credit. Therefore, it would seem that the Defendant did not *obtain* anything from the Plaintiff, by means of this financial affidavit, that would be proscribed by § 523(a)(2).

Even if Plaintiff could show that the Defendant had obtained money, property, etc. by filing a false financial affidavit, she

has failed to show either that her reliance was reasonable or that the Defendant made such false statement with the intent to deceive. The Plaintiff presented no evidence which clearly and convincingly showed that the Defendant was aware, at the time of the modification proceedings, that his pension plan was "vested." In addition, the Plaintiff did not show that the Defendant purposefully listed the house payment as an expense to make the Plaintiff believe that the house payments were being made. The financial affidavit merely asks the Defendant to list all his expenses, and the Defendant did so, listing those that he was paying as well as those that he was not able to pay.

In short, the Plaintiff has failed to produce any clear and convincing evidence that any of the Defendant's financial affidavits were of the kind that would support a claim under § 523(a)(2)(B). Therefore, neither of the Plaintiff's claims under § 523(a)(2)(B) can be sustained.

Because the Plaintiff has failed to establish nondischargeability under § 523(a)(5), § 523(a)(2)(A), or § 523(a)(2)(B), her complaint must be dismissed and the Defendant's debt declared dischargeable.