In re Joseph A. SOSTARICH, Debtor.

Joseph A. SOSTARICH, Appellant,

v.

Ruth LUTON, Appellee.

Civ. A. No. 86–0829–L(J).

United States District Court,
W.D. Kentucky,
Louisville Division.

March 25, 1987.

David L. Vish, Frank Mascagni, III, Louisville, Ky., for appellee.

F. Larkin Fore, Fore & Schwartz, Louisville, Ky., for appellant.

## MEMORANDUM OPINION

JOHNSTONE, Chief Judge.

This matter is before the court upon Joseph A. Sostarich's appeal of a summary judgment entered against him November 12, 1986 in the Bankruptcy Court for the Western District of Kentcky. A motion for stay of execution on the judgment was granted pending the resolution of this appeal. Appeal was proper under BANKRUPTCY RULE 8001, and jurisdiction is proper in this court under 28 U.S.C. § 158(a).

## FACTS

In May of 1975, an entity called Concade, Inc. sold Cynthia L. Kersey (Renfrow) and Joseph A. Sostarich a license to use the name "Fred Astaire Dance Studio" for the entire state of Tennessee. The Agreement allowed the sublicensing of the "Fred Astaire Dance Studio" name. On the same day that the Agreement was signed, and with the consent of Concade, the Agreement was assigned to Cinjo, Inc., a Tennessee corporation owned by Kersey. Kersey and Sostarich remained personally liable to Concade under the licensing agreement according to the express terms of the assignment. Appellant claims that the plan between himself and Kersey was that Kersey was to run the operation, although Appellant admits that such an arrangement violated the terms of the Agreement which required both Kersey and Sostarich to spend their full time with the business, and

"to prevent unscrupulous sales of instruction or other contractual negotiations with the students requiring payment of monies in excess of their ability to pay and in no event in excess of the specified sales limit established." *See* Addendum to Agreement dated May 6, 1975, Exhibit B, Appellant's Memo in Opposition to Summary Judgment.

Prior to the May 1975 Agreement, Lester Frank Swanson had been granted a Fred Astaire Dance Studio "franchise" for the city of Memphis, Tennessee. According to Swanson's franchise agreement, he was to pay 7% of the gross receipts of his franchise to the "State Franchisors", *i.e.*, Cinjo. Swanson was associated with a corporation known as Silmar, Incorporated (Silmar), a company owned by Ruth Silvey Kurtz. Silmar actually operated the Fred Astaire Dance Studio for which Swanson held the franchise. Fred Miller managed the Memphis Studio for Silmar. Sostarich did not work for Silmar, Kurtz .or Swanson, and did not actively oversee any of Silmar's operations.

Between July 18, 1975 and September 27, 1977 the Appellee, Ruth B. Luton purchased some 3072 hours of dance instruction from Silmar, through Swanson and Miller. She also loaned Swanson and Miller approximately $5,000.00 during the course of her "instruction." Mrs. Luton did not receive 3072 hourse of instruction from Silmar before she stopped going to the Memphis Studio. The unused and unsold portion of her hours of instruction cost $65,414.00 at the time she finally dropped out of the "instructions" she had bought. At the time that she bought these lessons, the Appellee was approximately 70 years old, and undergoing psychiatric treatment after a divorce from her husband of 40 years.

The Appellee brought suit in the Tennessee State Court in November 1978. The case was tried without a jury on March 2 and 3, 1983. Judgments of default were entered against Swanson and Silmar. Miller was dismissed because he was never served. Concade, Kurtz and the Fred Astaire National Dance Association, Inc. settled. Concade crossclaimed against the Appellant for indemnity under the May 1975 agreement for the amount of its settlement. The matter was tried on the Appellee's Complaint against the Appellant and Concade's crossclaim against the Appellant.

The Appellant did not appear at this trial although his attorney of record did. Appellant claims that he was told by the trial judge's secretary that the case would not be tried. However, Appellant admits that he did reach his attorney the morning of the trial, was informed that the trial would be on that day, and was told that he did not need to be there. At the trial, Appellant was represented by counsel who appeared, made objections, offered proof and cross-examined witnesses. The Tennessee Chancellor entered a judgment against the Appellant for $70,414.00 compensatory and $65,000.00 punitive damages.

Appellant filed a Chapter 7 proceeding later in 1983 seeking the protection of the Bankruptcy Court. Appellee subsequently filed a Complaint for nondischargeability of the judgment debt in the Bankruptcy Court for the Western District of Kentucky and moved that court for summary judgment. Appellee claimed that Appellant's judgment debt is nondischargeable under 11 U.S.C. § 523(a)(2), (4) and (6) and that the Appellant was collaterally estopped from relitigating the issue of fraud before the Bankruptcy Court. In opposition, Appellant maintained that the debt was dischargeable on two grounds: 1) the Tennessee judgment was in the nature of a default, therefore the determination of fraud was not conclusively litigated, and 2) the Tennessee judgment imputed fraud to the Appellant, and imputed fraud is not a basis for denial of discharge in bankruptcy under 11 U.S.C. § 523(a). On July 22, 1985, 53 B.R. 27, Judge Brown overruled the Appellee's motion for summary judgment stating that

the Court is unclear as to whether the Tennessee Judgment was a default or "in the nature of a default." *In re Davis, supra* [23 B.R. 639] at 640 [Bankr.W.D. Ky.1982]. Further, the only thing before this Court is the judgment of the state

court, not the entire record of the state proceeding, and we cannot determine what issues were actually litigated in the Tennessee Court.

After this Opinion was rendered, a transcript of the Tennessee action was entered into the record in this case, and the matter was set for trial. On August 4, 1986, the Bankruptcy Court heard arguments, stipulations and and agreements of counsel, and reviewed the complete record then before it. At the conclusion of the hearing, the court found that the issue of fraud had been actually adjudicated in the Tennessee court, and that the fraud imputed to the Appellant was the type of fraud which fell under 11 U.S.C. § 523(a)(2).[1] *See* Transcript of Hearing held August 4, 1986, at 66–67. Accordingly, the court sustained the Appellee's Motion for Summary Judgment, finding that the issue of fraud was "fairly and fully litigated" in the Tennessee State Court action and that "the judgment entered against the Defendant was not in fact a Default Judgment." *See* Order of August 6, 1986 at 2. Appellant moved the Bankruptcy Court for a stay of execution and appealed the court's Order sustaining

Appellee's motion for summary judgment to this court.

## THE NATURE OF THE TENNESSEE JUDGMENT

Appellant contends that the Tennessee judgment against him was either a default or "in the nature of a default," *In re Davis*, 23 B.R. 639, 640 (Bankr.W.D.Ky. 1982) and that it therefore has little or no collateral estoppel effect as to the issue of fraud. The court notes that the Tennessee court's Order of Judgment recites that Appellant's attorney of record was present at the trial, that the Order was signed by Appellant's attorney of record as "approved," and that the transcript of the trial of March 2 and 3, 1983 reveals that Appellant's attorney was present, that he made arguments before the court, objections to evidence, and cross examined witnesses on Appellant's behalf. On this basis the court below found that "the judgment entered against the Defendant was not in fact a Default Judgment." There is no substantial legal or factual basis to question this ruling.[2] The Bankruptcy Court is affirmed on this point.

---

1. The court stated that,

It is clear to this Court that that Court fully and fairly adjudicated the matter here in controversy. And in its own wisdom applied what it perceived to be controlling Tennessee law.

The perception of the Shelby Chancery Court with repsect to Tennessee law on the issue of fraud apparently embodies those same elements that would be necessary to support a finding of fraud by this Court.

We must assume also that the language of the final Judgment of that Court, imputing as it does fraud to Mr. Sostarich for the actions of his agents, properly applied the Tennessee law of fraud in the agency prnciple context.

It is not necessary for this Court to make a determination that the economic injury sustained by Mrs. Luton was the effect of a willful and malicious injury. It is not necessary to go to that extent. Under 532(a)(2) all that is necessary is to prove that actual fraud occurred resulting in damage to the Plaintiff.

That finding is made not by this Court, but by the Tennessee Court, which not only found that fraud, but applying the law of that fraud, imputed it to Mr. Sostarich. We are disinclined to act as a Court of Appellate Review for the final determinations of a Tennessee Court.

See Transcript of Hearing held August 4, 1986, at 66–67.

2. Black's Law Dictionary defines a "default judgment" as "a judgment rendered in consequence of the non-appearance of the defendant. One entered upon the failure of a party to appear or plead at the appointed time." *See* Black's Law Dictionary (1968) at 978. Appellant did file an answer in the Tennessee action, and the attorney representing him did appear at the trial. *See* Answer of Defendant, Joseph A. Sostarich, *Ruth B. Luton v. Ruth Silvey (Mrs. Richard) Kurtz, Lester Frank Swanson, Joseph A. Sostarich, Fred Astaire National Dance Association, Inc. and Concade, Inc.*, No. 85111–2 R.D. (Chancery Court for Shelby County, Tennessee, 10th Chancery Div., Memphis, March 3, 1983). Appellant's attorney in his opening statements at the trial to the Tennessee court stated that

Mr. Sostarich will not be here. He is a nonresident of the state and *he was served through the Secretary of State and is before the Court,* but he is a nonresident and will not be here to defend or contest the action.

*See* Transcript of *Luton v. Silmar et. al,* (No. 85111–2 R.D.) at 9 (emphasis added). *Clearly* the Appellant appeared before the Tennessee court.

## IMPUTED FRAUD AS A BASIS FOR NONDISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)(A), (4) OR (6).

A review of the Transcript of the Bankruptcy Court hearing, and the subsequent Order entered by that court reveals a careful consideration of whether the Tennessee judgment was in the nature of a default or not, but little discussion of the fraud actually litigated in the Tennessee action. The effect of the Order of August 6, 1986 was to decide the issue of nondischargeability on the basis of the overall characterization of the Tennessee judgment. This was an error.

■■■ The characterization of the Tennessee judgment in the present case as a non-default judgment did not decide the matter before the court below. Having found that the ruling of the Tennessee court was not a default judgment, the question remained as to the collateral effect to be given the finding of fraud in that judgment. Some collateral effect must be given to state court judgments in a bankruptcy nondischargeability proceeding. *See Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981); *In re Davis*, 23 Bankr. 639 (Bankr.W.D.Ky.1982). Specifically, a prior judgment is entitled to collateral effect as to the issues which were actually raised in the prior adjudication, which the debtor had the opportunity to litigate, and which which were necessary to the outcome in the prior action. *See Spilman, supra* at 228. Accordingly, in order to give a prior judgement its proper collateral effect, a Bankruptcy Court must examine the entire record of the state court proceeding to determine whether there was a substantial adjudication of facts which would make the obligation in question nondischargeable. *See Spilman, supra* at 228; *In re Davis*, 23 Bankr. 633, 635 (Bankr.W.D.Ky.1982); *In re Miller*, 23 Bankr. 636, 637 (Bankr.W.D.Ky.1982). In the present case, this translated into an inquiry into whether the facts proving the fraud contemplated in 11 U.S.C. § 523(a)(2), (4) or (6) were actually raised and litigated in, and necessary to the Tennessee state court judgment.

To the extent that the Bankruptcy Court did inquire into the record and judgment of the Tennessee court, it appears to have ignored the nature of the fraud litigated and found in that action. No where in the record of the Tennessee proceeding was there any proof of any actual fraud by Appellant. Indeed, the Appellee hardly knew who the Appellant was, and only brought suit against him because of his contractual relationship with the actual wrongdoers. *See* Transcript of *Ruth B. Luton v. Silmar, Inc., Ruth Silvey (Mrs. Richard) Kurtz, Lester Frank Swanson, Joseph A. Sostarich, Fred Astaire National Dance Association, Inc. and Concade, Inc.*, No. 85111–2 R.D. (Chancery Court for Shelby County, Tennessee, 10th Chancery Div., Memphis, March 3, 1983) at 185–86, 194–95, 206–07, 211–13 (emphasis added). The proof presented to the Tennessee court mostly related to the fraudulent acts and scheme of Silmar, Inc., Frank Swanson, and Fred Miller in selling Appellee dance lessons at the Silmar studio. It was on this basis that the Tennessee court rendered its decision. Appellant was only a party to the Tennessee action by virtue of his May 1975 contract with Concade.

In its Order of Judgment, the Tennessee court found that

the *agents* of Joseph A. Sostarich had the responsibility of treating Mrs. Luton fairly but did not. The proof established that Joseph A. Sostarich was the Master Licensor for Fred Astaire Dance Studios in the Tennessee region, including Silmar, Inc., the studio from which the plaintiff purchased all of her dance lessons. That Swanson and Miller as owners and operators of the studio from which Mrs. Luton purchased all of her dance lessons were sub-licensees of Joseph A. Sostarich. That Joseph A. Sostarich, *as Master Licensor* is chargeable with and responsible for the fraud practiced upon Mrs. Luton *by his agents, Silmar, Inc., Frank Swanson, and Fred Miller,* all of whom had the reponsiblility fo treating the plaintiff fairly, but did not. This court specifically makes a finding of fraud on behalf of the *agents* of Joseph A. Sostarich and *imputable* to

Joseph A. Sostarich and awards punitive damages in the amount of $65,000.00 to Ruth Luton.

*See* Order of Judgment, *Ruth B. Luton v. Silmar, Inc.*, No. 85111–2 R.D. at 2 (emphasis added). Clearly this was a judgment of vicarious liability against Appellant.

 Vicarious liability is not a basis for nondischargeability of a debt under 11 U.S.C. § 523(a)(2)(A), which by its own terms prescribes discharge of any debt "to the extent obtained, by ... false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). *See In re Emery*, 52 B.R. 68, 70 (Bankr.E.D.Pa.1985); *In re Scoggins*, 52 Bankr. 86, 89 (Bankr.N.D.Ala. 1985); *In re Homer*, 45 Bankr. 15, 21 (Bankr.W.D.Mo.1984); *In re Spector*, 22 Bankr. 226, 233 (Bankr.N.D.N.Y.1982). *Cf. In re Taylor*, 514 F.2d 1370, 1373 (9th Cir.1975). In the present action, Appellant was neither charged with nor adjudged liable of fraud through false pretenses or false representations. Therefore, the judgment against Appellant could only be nondischargeable if the judgment debt was founded upon an "actual fraud" by Appellant. 11 U.S.C. § 523(a)(2)(A).

As noted above, the Appellant was not adjudged liable for "actual fraud" within the meaning of 523(a)(2)(A) in the Tennessee action. It was established in that action that Appellant never took any active or positive step in defrauding the Appellee. Rather, the basis of his liability in the Tennessee court was his contractual relationship with Silmar. The Bankruptcy Court apparently recognized the basis of the Tennessee judgment, for it repeatedly referred to the fraud as "imputed" to the Appellant. *See* Transcript of Hearing, at 66–67. It is unclear why the court below did not find the debt nondischargeable under § 523(a) in light of its recognition of the nature of the Tennessee judgment.[3]

This court must therefore reverse the Bankruptcy court's summary judgment, and remand the case for clarification and further consideration on the basis of this decision.

An appropriate Order shall accompany this memorandum.

---

3. The court asserted at the conclusion to in the hearing on this matter that "[u]nder 523(a)(2) all that is necessary is to prove that actual fraud occurred resulting in damage to the Plaintiff." *See* Transcript of Hearing held August 4, 1986, at 66–67. This is a correct statement of the law as far as it goes, but it omits the requirement that the actual fraud be the *debtor's*, and not merely imputed to him under 11 U.S.C. § 523(a)(2)(A). Summary judgment on this basis would be error, but it is not clear whether this was the basis of the Bankruptcy Court's decision.