**In re Victor Ramon MOJICA, Debtor,**

**James A. KRAUSKOPF, as Commissioner of the Department of Social Services of the City of New York, Plaintiff,**

**v.**

**Victor Ramon MOJICA, Defendant.**

**Bankruptcy No. 182–12551–260N.
Adv. No. 183–0067.**

United States Bankruptcy Court,
E.D. New York.

June 20, 1983.

Frederick A.O. Schwarz, Jr., Corp. Counsel, Joseph Armstrong, Sp. Asst. Corp. Counsel, New York City, for Dept. of Social Services; Stephan L. Walker, G. Foster Mills, New York City, of counsel.

David L. Tecklin, Bruckman, Bernstone & Goldman, New York City, for debtor-defendant.

## DECISION AND ORDER

CONRAD B. DUBERSTEIN, Bankruptcy Judge.

This is an adversary proceeding to determine the dischargeability in bankruptcy of child support payments owing to the plaintiff, from the debtor-defendant, not derived from a separation agreement, divorce decree or property settlement agreement under Section 523(a)(5) of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2591 (1978), but instead arising out of an order obtained by the plaintiff from the Family Court of the State of New York directing such payments.

## I

### FACTS

The parties have stipulated to the following facts:

The plaintiff is a creditor of the debtor-defendant and is listed in the debtor's petition and schedules. His Chapter 7 petition in bankruptcy was filed on October 7, 1982.

On or about January 14, 1979, the debtor's wife applied for public assistance from the plaintiff for her three children, who were the issue of the marriage between her and the debtor. She received such public assistance until September of 1981.

Pursuant to Section 348 of the New York Social Services Law support rights of the debtor's wife were assigned by operation of law to the plaintiff. Subsequently, the plaintiff, as assignee, petitioned the Family Court of the State of New York, County of Queens, for an Order of Support pursuant to Article 5A of the New York Family Court Act. Such Order of Support was granted by the Honorable Saul Moskoff,

Judge of the Family Court, on August 2, 1979, ordering the debtor to pay to the plaintiff $70.00 bi-weekly.

The debtor is in arrears with regard to the payments to the plaintiff pursuant to the said Order, such arrears constituting the debt owed by the debtor to the plaintiff.

## II

### ISSUE

The sole issue to be decided in this proceeding is whether or not the debtor-defendant's debt to the plaintiff is nondischargeable in bankruptcy.

## III

### DISCUSSION AND CONCLUSIONS

### A

■ The debtor has taken the position that the law in effect at the time his debt was incurred should govern questions of dischargeability. The plaintiff contends that such questions should be resolved by applying the law in effect at the time dischargeability is litigated.

Under 11 U.S.C. Section 523, as amended by Pub.L. 97–35 (Title XXIII, Section 2334(b), August 13, 1981, 95 Stat. 863), debts for alimony or support pursuant to Section 402(a)(26) of the Social Security Act (42 U.S.C. Section 602(a)(26)) are nondischargeable in bankruptcy.

The debtor's petition was filed October 7, 1982, more than one year after the time that the amendment to Section 523 took effect. Prior to that amendment such debts were dischargeable. *In re Blair,* 644 F.2d 69 (2d Cir.1981).

Questions of dischargeability under the amended section have arisen on several occasions since the enactment of the amendment. The context in which this question presented itself was nearly identical in each instance. Typically a male debtor would have filed a voluntary Chapter 7 petition in bankruptcy prior to the August 13, 1981 amendment, but discharge was not yet

granted as of that date. Included in his schedules of liabilities would be some type of alimony or child support payments that had been assigned to a state welfare agency pursuant to the aforementioned section of the Social Security Act. The assignee then would object to the discharge of the assigned debt under the authority of the amended section. The debtor in each of these cases took the position that the law in effect at the time his petition was filed governed issues of dischargeability and not the time at which the question of dischargeability was ruled on by the court. The reported cases were split in their opinions on this matter. In this, the Second Circuit, it was decided in *In re Spell,* 650 F.2d 375 (2nd Cir.1981) that the bankruptcy judge should have applied the law as it existed at the time he determined the dischargeability of the debt. A similar conclusion was reached by a district court in *In re Kuehndorf,* 24 B.R. 555 (W.D.Wis.1982) and by a bankruptcy court in *In re Leach,* 15 B.R. 1005 (Bkrtcy.D.Conn.1981). Other courts have, however, in direct opposition to *Spell,* taken the position that dischargeability of debts is to be determined according to the date on which the bankruptcy petition is filed. *In re Ahrendt,* 28 B.R. 329, 10 B.C.D. 448 (Bkrtcy.E.D.Wis.1983); *In re Morris,* 21 B.R. 816 (Bkrtcy.N.D.Iowa 1982); *Matter of Flamini,* 19 B.R. 303 (Bkrtcy.E.D.Mich. 1982); and *Matter of Hazen,* 19 B.R. 545 (Bkrtcy.D.Idaho 1982). This is regarded as the better view in 3 *Collier on Bankruptcy,* Para. 523.15(4) p. 523–114 (15th ed. 1979).

In none of the above cited cases was it held that dischargeability should be determined by the law in effect on the date on which the debt was incurred. Nevertheless, this is the finding the debtor urges this court to arrive at. We find no basis for such a ruling. At the very least dischargeability is determined by the date of the filing of the petition. *See, In re Morris; Matter of Flamini;* and *Matter of Hazen, supra.* Accordingly, since it is clear that the debtor's petition was filed after the amendment to Section 523, dischargeability will be determined pursuant to the amended statute.

**B**

Having decided which version of the law will apply we now turn our attention to an even more fundamental issue, one not addressed by either of the parties. That is, did the debt arise "in connection with a separation agreement, divorce decree or property settlement agreement" as required by 11 U.S.C. Section 523(a)(5) and, if not, may the debt nevertheless be excepted from discharge? *In re Leach, supra,* held that a debt for alimony or support must come from one of these specific sources to be excepted from discharge. This requirement is emphasized in 3 *Collier on Bankruptcy,* Para. 523.15(2) p. 523–111 (15th ed. 1979).

Section 523(a)(5) also excepts from the operation of a discharge debts for "maintenance for, or support of both spouse or child." This provision applies only "in connection with a separation agreement, divorce decree, or property settlement agreement." This qualifying clause did not appear in section 17a(7) of the Bankruptcy Act, and represents a significant change. Section 17a(7) was construed to apply to the common law liability involuntarily imposed upon the parent for support of a child. The provisions of section 523(a)(5) are clear that liability for maintenance and support are dischargeable unless the liability arises in connection with a separation agreement, divorce decree, or property settlement agreement.

It is apparent that the debtor's obligation did not arise from any of the above enumerated agreements. Rather, it was imposed on him by an order of the Family Court after his wife had applied for and been granted public assistance for the couple's children. We know of no case law or scholarly interpretations that have expanded the literal meaning of Section 523(a)(5) to include, as nondischargeable support obligations that arise from a source other than a separation agreement, divorce decree or property settlement agreement. Since the debtor's legal obligation is not derived from these sources, but solely from a court order obtained at the behest of the plaintiff, the

question is whether the subject debt may nevertheless be excepted from discharge. This Court holds that it may and is so excepted. This conclusion was arrived at after carefully analyzing the legislative history of Section 523(a)(5) for the purpose of ascertaining Congressional intent as well as the public policy underlying this exception. The remainder of this decision will entail a discussion of that legislative history as it applies to the issue in this proceeding.

In 1970 the Commission on the Bankruptcy Laws of the United States was established by Public Law 91–354. The Report of the Commission, H.R.Doc. No. 93–137, 93d Cong., 1st Sess., (1973) recommended that the exceptions from discharge in the Bankruptcy Act be "substantially continued" in any new bankruptcy legislation. (Part I at 176). Section 17 of the Bankruptcy Act (11 U.S.C. Section 35) provided that:

a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ..... (7) are for alimony due or to become due, or for maintenance or support of wife or child, or for seduction of an unmarried female, or for breach of promise of marriage accompanied by seduction, or for criminal conversation.

Under this section it was well established that if a husband abandoned his wife he retained a moral and legal duty of support and debts incurred for such maintenance and support were nondischargeable without any requirement that the debt arise from a specific decree or agreement. *In re Meyers,* 12 F.2d 938 (W.D.N.Y.1926).

A proposed statute prepared as Part II of the Commission's Report was phrased thusly:

Section 4–506. Exceptions from Discharge: Determination of Dischargeability and Liability on Nondischargeable Debt.

(a) Exceptions from discharge. A discharge extinguishes all debts of an indi-

vidual debtor, whether or not allowable, except the following:

\* \* \* \* \* \*

(6) any liability to a spouse or child for maintenance or support, for alimony due or to become due, or under a property settlement in connection with a separation agreement or divorce decree.

Note 12 accompanying the above proposed section explains the difference between it and the corresponding section of the Act as follows:

12. Clause (6) of subdivision (a) overhauls Section 17a(7) of the present Act. Under the proposed Act debts denied dischargeability under the clause are limited to family support obligations; debts "for seduction of an unmarried female, or for breach of promise of marriage accompanied by seduction, or for criminal conversation: are eliminated as no longer responsive to prevailing social policy. The clause is broadened, however, to include any liability to a "spouse or child .... under a property settlement in connection with a separation agreement or divorce decree." Under the present Act such property settlements are dischargeable. The change recognizes that obligations to support family dependants in the future may take the form of either a duty to make periodic payments based on need or an obligation to pay a settlement based on the debtor's present or anticipated wealth. The choice of form frequently turns on tax considerations or other factors not directly related to the duty to provide support...

■ The significance of this proposed section and the explanatory note is that it underscores Congressional commitment to excepting from discharge only those debts that are truly in the nature of alimony or support. This Court interprets the specific language of the statute describing the sources from which such obligations may arise as an attempt to effect that goal. There is, however, no apparent logic for not excepting any legitimate debt for alimony or support simply because it arose in a manner not expressly enumerated in the

statute. In bankruptcy proceedings equity requires that the substance of the debt should prevail over the form where appropriate. *Pepper v. Litton,* 308 U.S. 295, 305–06, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939); *In re Davich,* 27 B.R. 888, 10 B.C.D. 440 (Bkrtcy.D.S.D.1983).

Subsequent to the Commission's Report the House Committee on the Judiciary reported to the full House with a draft of a new bankruptcy statute, H.R. 8200.[1] The portion of that bill dealing with the dischargeability of alimony and support obligations read as follows:

Section 523  Exemptions to Discharge

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\*   \*   \*   \*   \*   \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child.

This version of the alimony and support exception goes further than even the proposed section 4–506 in stating specifically the nondischargeable character of alimony and support obligations.

In addition to the House bill, a separate bill, S. 2266,[2] was considered by the Senate. The section of that bill relating to a discharge of alimony and support read as follows:

Section 523  Exemptions to Discharge

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from

\*   \*   \*   \*   \*   \*

(6) any liability to a spouse or child for maintenance or support, or for alimony due or to become due, in connection with a separation agreement or divorce decree. A debt shall not be excepted from discharge, however, solely because the spouse is obligated in any manner to pay the debt, and except that if such maintenance, support or alimony award includes liability for debts accrued prior to the separation agreement or divorce decree then the court may determine that such debts may be discharged;

The Report of the Committee on the Judiciary accompanying S. 2266 explained this section as follows:[3]

Paragraph (6) excepts from discharge debts to a spouse, former spouse, or child of the debtor for alimony to, maintenance for, or support of the spouse or child. This language, in combination with the repeal of section 326 of the bill, will apply to make nondischargeable only alimony, maintenance, or support owed directly to a spouse or dependent. What constitutes alimony, maintenance, or support, will be determined under the bankruptcy law, not State law. Thus, cases such as *In re Waller,* 494 F.2d 447 (6th Cir.1974), are overruled, and the result in cases such as *Fife v. Fife,* 1 Utah 2d 281, 265 P.2d 642 (1952) is followed. The proviso, however, makes nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations as to whether a particular agreement to pay money to a spouse is actually alimony or a property settlement.

This Court views the language of S. 2266 and the above report as a further refinement of the long standing policy of excepting from discharge debts for alimony and support. The clause in paragraph (6) limiting nondischargeable debts to those arising from a divorce decree or separation agreement cannot be interpreted in isolation from the succeeding language of that paragraph or the Senate Judiciary Committee Report. The second sentence of paragraph (6) implies that only those debts which are actually in the nature of alimony or support will be nondischargeable. The Senate Report supports this interpretation and dis-

---

1. H.R.Rep. No. 595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

2. S.Rep. No. 989, 95th Cong., 2d Sess. 2 (1978).

3. S.Rep. No. 989 at 79, U.S.Code Cong. & Admin.News 1978, p. 5865.

cusses the requirement that support or alimony be paid directly to the spouse or dependent and that final determinations regarding whether a debt is actually for alimony or support will depend on bankruptcy law and not State law. This seems to express a Congressional concern with making certain that all parties to a bankruptcy proceeding are treated fairly and that the purposes of the bankruptcy case are given proper effect. It is an attempt to draft a statute that ensures that legitimate debts for alimony or support owing directly to a spouse or dependent are not discharged lest it undercut an important social policy regarding such obligations. *See, Goggans v. Osborn*, 237 F.2d 186 (9th Cir.1956). On the other hand, if a debt is not truly for alimony or support it should be discharged in order to give the debtor the "fresh start" that is central to the theme of the current Bankruptcy Code. *See,* Bkr.L.Ed. *Summary* Section 4:3. It does not seem logical, however, that Congress could have intended to allow for the dischargeability of debts that arise from a court order but outside of a divorce decree or separation agreement. "Rehabilitation of helpless debtors is an important objective but there is no compelling reason why this should be at the expense of the economically helpless members of his, or her family." Cowans, *Bankruptcy Law and Practice,* Section 6.47 (Interim Ed.1983).

The final version of the new Bankruptcy law was arrived at in October, 1978 as the deadline for Congressional action drew near. If a final bill had not been approved by both houses prior to adjournment it would have been necessary to begin anew the following year. It was in this harried and hurried atmosphere that the Bankruptcy Reform Act as we now know it was produced in its final form.

The final version of Section 523 reads as follows:

Section 523 Exceptions to discharge.

(a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support;

The final bill was the product of a compromise between the House and Senate versions. The Senate Debate on Compromise Bill,[4] provides an interpretation of this final version of the bill but does not explain how the specific language of the bill was arrived at or the reasoning behind it. The relevant portion of the debate is as follows:

Section 523(a)(5) is a compromise between the House bill and the Senate amendment. The provision excepts from discharge a debt owed to a spouse, former spouse or child of the debtor, in connection with a separation agreement, divorce decree, or property settlement agreement, for alimony to, maintenance for, or support of such spouse or child but not to the extent that the debt is assigned to another entity. If the debtor has assumed an obligation of the debtor's spouse to a third party in connection with a separation agreement, property settlement agreement or divorce proceeding, such debt is dischargeable to the extent that payment of the debt by the debtor is not actually in the nature of alimony, maintenance, or support of debtor's spouse, former spouse or child.

Despite the lack of information concerning the evolution of this final version certain things can be reasonably deduced from it through a careful reading of the above material. First, it is clear that Congress was intent on making certain that only debts that were truly in the nature of

**4.** 124 Cong.Rec. H11864–66 (daily ed. Oct. 6, 1978).

alimony or support paid directly to a child were excepted from discharge. That is the reason assigned obligations were expressly deemed to be dischargeable. It is also the reason the courts were given the power to make determinations as to whether a debt was for alimony or support under the bankruptcy law without being bound by other State law or the parties' designation of an obligation as alimony. 11 U.S.C. Section 523(a)(5)(B). It is apparent that Congress was being quite cautious in this matter. Shortly after the enactment of the Code it became apparent, however, that an error had been made in excluding all assigned obligations from the exceptions to discharge under Section 523(a)(5). Consequently, Section 2334(b) of Title XXIII of the Committee's Budget Reconcilliation Act of 1981, Pub.L. No. 97–35 was enacted in August of 1981 to amend 11 U.S.C. Section 523(a)(5)(A) to make nondischargeable a child support obligation assigned to a State under Section 402(a)(26) of the Social Security Act. S.Rep. 97–139, 97th Cong., 1st Sess. 523 (1981), U.S.Code Cong. & Admin. News 1981, pp. 396, 789–790 stated:

> Committee amendment—The committee amendment would reverse the effect of an amendment made by section 328 of P.L. 95–598 and reinstate a provision of the Social Security Act previously in effect, declaring that a child support obligation assigned to a State as a condition of AFDC eligibility is not discharged in bankruptcy. The Committee believes that a parent's obligation to support his child is not one that should be allowed to be discharged by filing for bankruptcy, and that a child support obligation assigned to a State as a condition of AFDC eligibility should not be subject to termination in that way.

This amendment is a recognition by Congress that legitimate debts for alimony or support may take the form of an assignment to a third party. It is consistent with what this Court sees as the principal purpose behind the alimony and support exception and supports the view that it was the intent of Congress that all legitimate debts for alimony and support be excepted from discharge as a matter of public policy and not simply selected ones.

The statute as it is now written is simply not an accurate codification of true Congressional intent. It is this Court's opinion that 11 U.S.C. Section 523(a)(5)(A) was "overdrafted" in that it failed to adequately consider legitimate forms of alimony and support other than those enumerated.

■ There is judicial precedent for finding that a statute does not reflect Congressional intent and therefore should be overlooked despite its otherwise plain meaning. The Second Circuit held in *In re Adamo,* 619 F.2d 216 (2d Cir.1980), that a student loan was not subject to discharge in bankruptcy despite what the statute might say. It was the Court's view that the failure to provide for nondischargeability of such loans was the result of Congressional inadvertence and that "to follow blindly the plain meaning of the statute without regard to the obvious intention of Congress would create an absurd result in accord with neither established principles of statutory construction nor common sense." at 219. This conclusion was reached after a careful analysis of the legislative history of the educational loan exception similar to that which we are engaged in here with respect to the alimony and support exception.

Congressional intent and social policy regarding the exception of alimony and support obligations from discharge is given further support in Chapter 13 of the Code. 11 U.S.C. Section 1328 states with regard to discharge under that Chapter that:

> (a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
>
> (1) provided for under section 1322(b)(5) of this title; or
>
> (2) of the kind specified in section 523(a)(5) of this title.

The legislative history accompanying that section underscores the clear language of the statute by saying:

> Subsection (a) requires the court to grant the debtor a discharge as soon as practicable after the completion of all payments under the plan. The discharge is of all debts except alimony, maintenance, or support, and certain long-term obligations specially provided for under the plan. (House Report No. 95–595, 95th Cong.1st Sess. 430 (1977)), U.S.Code Cong. & Admin.News 1978, p. 6386.

This deliberate exclusion from discharge under Chapter 13 of these debts is particularly significant in light of the fact that other debts otherwise excepted from discharge under Section 523(a), such as educational loans, can be discharged under Section 1328. We can think of no clearer statement of how important Congress viewed these obligations. It is very difficult to imagine that they would have knowingly excluded from exception any legitimate debt for alimony or support. We rely on this to support our conclusion that Section 523(a)(5) was not properly drafted and should be interpreted to reflect the true spirit and intent of the law and not simply be given a literal interpretation. "The result of an obvious mistake should not be enforced, particularly when it 'overrides common sense and evident statutory purpose'." *Adamo, supra* at 222, citing *United States v. Babcock,* 530 F.2d 1051, 1053 (D.C. Cir.1976); *United States v. Brown,* 333 U.S. 18, 26, 68 S.Ct. 376, 380, 92 L.Ed. 442 (1948). We agree with the statement of Judge Bartels in *Adamo, supra* at 222 that "nowhere has this principle been expressed more eloquently than by Judge Learned Hand in his concurring opinion in *Guiseppi v. Walling,* 144 F.2d 608, 624 (2d Cir.1944), where he stated:

> There is no surer way to misread any document than to read it literally; in every interpretation we must pass between Scylla and Charybdis; and I certainly do not wish to add to the barrels of ink that have been spent in logging the route. As nearly as we can, we must put

ourselves in the place of those who uttered the words, and try to divine how they would have dealt with the unforeseen situation, and, although their words are by far the most decisive evidence of what they would have done, they are by no means final.

These are indeed wise words and we will heed them, thereby depriving critics of our legal system of any further reason to validate the belief of the fictitious Mr. Bumble that "The law is a ass, a idiot." [5]

## IV

### ORDER

Therefore, it is ORDERED that all debts owing to the plaintiff from the defendant by way of assignment made pursuant to Section 402(a)(26) of the Social Security Act are nondischargeable in bankruptcy.

---

**5.** Charles Dickens, *Oliver Twist.*