**In re Louis M. SHINE, Debtor.**

**Marguerite C. SHINE, Plaintiff,**

v.

**Louis M. SHINE, Defendant.**

**Bankruptcy No. 82–406.**
**Adv. No. 82–296.**

United States Bankruptcy Court,
D. New Hampshire.

June 25, 1985.

Luke O'Neill, Manchester, N.H., for defendant.

Paul Rinden, Concord, N.H., for plaintiff.

REVISED AND SUPPLEMENTAL
MEMORANDUM OPINION
DATED JUNE 25, 1985

JAMES E. YACOS, Bankruptcy Judge.

In a Memorandum Opinion entered on October 29, 1984 in this adversary proceeding the court ruled that the support order in question related to an oral separation agreement between the parties and therefore came within the provisions of § 523(a)(5) of the Bankruptcy Code rendering such a debt nondischargeable. *In re Shine*, 43 B.R. 686 (D.N.H.1984).

The defendant ex-husband subsequently filed a motion for reconsideration of the October 29, 1984 decision which has led to further briefing by the parties and reargument before the court. The defendant's principal contention of error is based upon the following language included in that earlier decision:

"The debtor further contends that the 1978 amendments to the Bankruptcy Code, which added language referring to a support debt 'in connection with a separation agreement, divorce decree or property settlement agreement', wrought an important change in the statutory language crucial to the decision here. The debtor argues that there was no separation agreement or divorce proceedings as to which the District of Columbia order related, and that therefore the debt established by that order is dischargeable.

Putting aside the question of whether the order might be found to be 'in connection with' the separate divorce proceeding in Virginia, I conclude that it at least relates to the oral separation agreement between the parties and therefore comes within the statute. This renders the obligation created by the District of Columbia order non-dischargeable unless there is some other basis for denial of that relief to the plaintiff."

This case presents an unusual situation in which the support considerations and the divorce considerations between the parties were handled in two different proceedings in two different courts. On December 22, 1972 the plaintiff filed a "Complaint and Affidavit for Separate Maintenance" in the Superior Court of the District of Columbia, Family Division, under procedures in that jurisdiction which permit support orders to be obtained independently of divorce proceedings. This resulted in an order entered April 12, 1983 by the District of Columbia Court ordering the defendant forthwith to begin $250 monthly support payments to the plaintiff.

At the time the parties separated in late 1972 they had an oral separation agreement which provided for a division of their various items of property. This oral agreement did not include any agreed obligation on the part of the defendant to make support payments to the plaintiff.

On reconsideration I conclude that the defendant is correct in arguing that the 1973 support order entered in the District of Columbia was not "in connection with a separation agreement" within the meaning of the then-existing language of the pertinent statutory language.

Bankruptcy Code § 523(a)(5) as it existed with reference to the present bankruptcy case filed in 1982 provided that the general bankruptcy discharge would not discharge an individual debtor from:

"... Any debt to a spouse, former spouse ... for support of ... such spouse ... in connection with a separation agreement, divorce decree, or property settlement agreement...."

■ The defendant is correct in his contention that this language contemplates a support debt created by virtue of a separation agreement *which itself* embodies an agreed arrangement between the parties for the obligation to make support payments. Here, the only "separation agreement" was the oral agreement to separate and to divide up certain property interests. The weakness is not the oral nature of the agreement but rather that the agreement simply did not provide for any support obligation as a consensual matter.

■ The defendant is also correct in pointing out that the specific language of § 523(a)(5) in effect between 1978 and 1984, which is applicable to this case, narrowed the categories of support obligations which would be nondischargeable in bankruptcy, as evidenced by the broader language in the bankruptcy statutes both before and after that period. *Bankruptcy Act*, § 17(a)(7); *Bankruptcy Code* § 523(a)(5), as amended July 10, 1984.

The foregoing altered analysis does not completely dispose of the pending matter since there were a number of additional actions taken by the parties and the courts involved subsequent to the 1973 support order.

On July 1, 1975 the plaintiff filed a divorce action in the Circuit Court for Fairfax County, Virginia. The defendant then lived in New Hampshire but was effectively served with the divorce complaint. The complaint did not ask for any support or property settlement. The defendant did not answer and the plaintiff was granted a final decree of divorce on November 3, 1975.

Meanwhile, the 1973 support order in the District of Columbia was still on the books and in the spring of 1976 the defendant ex-husband appeared pro se in the District of Columbia Court and asked that that order be vacated. The plaintiff appeared through counsel in opposition and established that the debtor was substantially in arrears in payments of the monthly support originally decreed in the 1973 order. On June 1, 1976 the District of Columbia

Court entered a money judgment in favor of the plaintiff establishing a support obligation debt on the part of the defendant for past arrearages in the amount of $9,045.00.

The defendant sought counsel and appeared again in August of 1976 and secured the entry on August 9, 1976 of the following "Consent Order" by the District of Columbia Court:

THIS MATTER having come before the Court upon Defendant's Motion to Vacate Support Order entered herein on or about April 2, 1973, and it appearing to the Court that the Court entered a money judgment herein in favor of the Plaintiff on June 1, 1976 and that the parties are agreeable to vacate the Order For Support Payments subsequent to that date, and for good cause shown, it is by the Court this *9th* day of *August,* 1976

ORDERED, that the Order of Support entered herein on April 2, 1973 be and it is hereby vacated,

FURTHER ORDERED, that this Order be effective as of June 2, 1976, and without prejudice to the Money Judgment entered June 1, 1976.

This order was signed on the bottom by the plaintiff and her attorney, and by the defendant and his attorney.

■ It is my conclusion that the foregoing developments indicate that the June 1, 1976 judgment of the District of Columbia Court was within its jurisdiction as a simple termination of the ongoing monthly support obligation established by its 1973 order. As such the June 1, 1976 judgment established the total amount of arrearages due under the earlier order and established a support obligation debt due from the defendant. The "support" character of the obligation did not change by virtue of being reduced to a money judgment. *Matter of Glover,* 16 B.R. 213 (M.D.Fla.1981).

The crucial question then becomes whether this debt, clearly still having its character as a support obligation, was obtained "in connection with a separation agreement, divorce decree or property settlement agreement" as provided within the then-applicable provisions of § 523(a)(5) of the Bankruptcy Code.

It is obvious at least on the face of the matter that the June 1, 1976 judgment debt was not obtained "in connection with" the divorce decree entered some seven months earlier in the Virginia court. There also is no evidence in the record before me that the entry of the divorce decree by the Virginia court was affected in any way by considerations of the still-pending support order from the District of Columbia Court.

■ The other question which must be considered is whether the June 1, 1976 judgment establishing a support obligation debt was entered in connection with a "separation agreement" in any sense by virtue of the defendant's express consent to the effectiveness of the June 1 judgment, as evidenced by his consent to the subsequent August 9, 1976 order of the District of Columbia Court. While arguably the August 9th consent order amounted to a "final separation agreement" between these embittered parties, I conclude that the only "agreement" within the meaning of § 523(a)(5) which the defendant gave by signing the August 9th consent order was simply an agreement to the amount of the prior *court-ordered* support obligation arrearages, in order to terminate the running of those obligations once and for all. It would be straining to read anything more into the situation in order to bring the debt into the very limited dischargeable category then permitted by the statute.

Accordingly, the court concludes that the decision reached in the earlier opinion was erroneous for the reasons indicated. A debt is dischargeable under bankruptcy law unless it is specifically excepted from discharge under § 523 of the Code. In keeping with the "fresh start" purposes of the bankruptcy laws exceptions to discharge are strictly construed. *Matter of Cross,* 666 F.2d 873, 879–80 (reported in Vol. 16, Bankruptcy Reporter) (5th Cir.1982); *Danns v. Household Finance Corp.,* 558 F.2d 114 (2d Cir.1977); *In re Vickers,* 577 F.2d 683 (10th Cir.1978). A creditor objecting to discharge has a heavy burden to

establish that the debt in question is squarely within a specific statutory exception. *Danns v. Household Finance Corp.,* 558 F.2d 114, 116 (2d Cir.1977); *In re Marino,* 29 B.R. 797 (N.D.Ind.1983). After a closer review of the statutory language and history, I agree on reconsideration that the creditor in this case simply has not been able to bring the debt in question within the narrowly-drawn statutory language that was in effect at the time this bankruptcy case was commenced.