BOWNES, Circuit Judge.
 

 In this appeal, we must determine whether an obligation incurred because of the failure to pay court-ordered support is dis-chargeable in bankruptcy where the support order was not explicitly embodied in “a separation agreement, divorce decree, or property settlement agreement,” the language of the bankruptcy statute then in effect, 11 U.S.C. § 523(a)(5) (1978).
 

 The plaintiff, Marguerite Shine, and the defendant, Louis Shine, were married in the District of Columbia on September 20, 1969. They did not have any children and, on October 30, 1972, they divided their property and separated without making any agreement regarding support. In December of 1972, plaintiff commenced an action for separate maintenance from defendant in the Superior Court of the District of Columbia where defendant was a resident. The Superior Court issued an order requiring defendant to pay $250 per month to plaintiff beginning in April 1973. In 1975, plaintiff, then a resident of Virginia, was granted a decree of divorce from defendant by the Circuit Court of Fairfax County, Virginia. The decree made no provision for alimony and support. It stated: “the parties hereto have not entered into a Property Settlement Agreement [and] ... there are no property rights to be determined by the Court.” At the time of the divorce, defendant was a resident of New Hampshire.
 

 Throughout this period, the District of Columbia support order continued in effect with defendant in arrears. Plaintiff brought suit on the arrearage in the Superior Court of the District of Columbia in 1976 and judgment was entered for $9,045, the payments due as of June 1, 1976. By a consent decree entered in August of 1976, the. Superior Court vacated the order of support first entered in 1973 for payments due subsequent to June 1,1976, leaving the judgment for the arrearage untouched. No payment was made on the judgment. In 1982, plaintiff brought suit in the United States District Court for the District of New Hampshire to collect the arrearage. A judgment for $12,112, plus interest and costs, issued and plaintiff then proceeded to sue in the New Hampshire Merrimack County Superior Court to collect the judgment. This suit was stayed when defendant filed for bankruptcy.
 

 Plaintiff then filed a complaint in the United States Bankruptcy Court for the District of New Hampshire seeking to have the support obligation declared nondis-chargeable under 11 U.S.C. § 523(a)(5) (1978). Section 523(a)(5) excepted from discharge any debt “to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement....” The Bankruptcy Court initially held that the debt was not dischargeable because it “relates to the oral separation agreement between the parties.”
 
 In re Shine,
 
 43 B.R. 686, 688 (Bankr.D.N.H.1984). Upon motion for reconsideration, however, it held that the debt was dischargeable because it was not created by a “separation agreement
 
 which itself
 
 embodies an agreed arrangement between the parties for the obligation to make support payments.”
 
 In re Shine,
 
 49 B.R. 978, 980 (Bankr.D.N.H.1985). Upon appeal, the district court held that the debt was not dischargeable because “to
 
 *585
 
 allow the defendant’s debt to be discharged would be contrary to Congressional intent and public policy.”
 
 In re Shine,
 
 57 B.R. 386, 389 (D.N.H.1986). Defendant has appealed.
 

 To our knowledge, no circuit court has yet addressed the dischargeability of support debts which implicated the scope of the “in connection” clause of § 523(a)(5), although numerous bankruptcy courts have considered the dischargeability of such debts. The question has arisen in cases where child or spousal support has been ordered by a court independent of any legal dissolution of a marriage or where child support has been ordered as the result of a paternity suit. The bankruptcy courts are divided. The courts finding the debt dis-chargeable have used different rationales. Some have looked primarily to the words of the statute itself,
 
 In re Antikainen,
 
 48 B.R. 630 (Bankr.D.Minn.1985);
 
 In re Leach,
 
 15 B.R. 1005 (Bankr.D.Conn.1981). Some have been guided by the general rule that exceptions to discharge in bankruptcy should be narrowly construed against the creditor and in favor of the bankrupt,
 
 In re Marino,
 
 29 B.R. 797 (N.D.Ind.1983);
 
 In re Brown,
 
 43 B.R. 613 (Bankr.M.D.Tenn.1984);
 
 In re Fenstermacher,
 
 31 B.R. 77 (Bankr.D.Neb.1983),
 
 overruled on other grounds, In re Pierson,
 
 47 B.R. 258 (Bankr.D.Neb.1985). Others have found in the legislative history of § 523(a)(5) an intent that Congress meant to exclude from protection support debts not specifically originating in a formal separation agreement or divorce decree.
 
 In re Bruner,
 
 43 B.R. 143 (Bankr.E.D.Mo.1984);
 
 In re Brown,
 
 43 B.R. 613 (Bankr.M.D.Tenn.1984);
 
 In re Richards,
 
 33 B.R. 56 (Bankr.D.Or.1983),
 
 rev’d on other grounds,
 
 45 B.R. 811 (D.Or.1984).
 

 Those courts finding the debt not dis-chargeable have also relied upon the legislative history of § 523(a)(5), finding a basic intent upon the part of Congress to except spousal and child support debts from discharge and no specific intent to exclude from that protection support debts arising outside of divorce or formal separation.
 
 In re Pierson,
 
 47 B.R. 258 (Bankr.D.Neb. 1985);
 
 In re Balthazor,
 
 36 B.R. 656 (Bankr.E.D.Wisc.1984);
 
 In re Mojica,
 
 30 B.R. 925 (Bankr.E.D.N.Y.1983);
 
 In re Cain,
 
 29 B.R. 591 (Bankr.N.D.Ind.1983);
 
 but see In re Marino,
 
 29 B.R. 797. Other courts finding the debt nondischargeable have found the requisite “connection” in a variety of circumstances in which the obligation derived from a source other than the main divorce decree or separation agreement.
 
 In re Jackson,
 
 27 B.R. 892 (Bankr.W.D.Ky.1983);
 
 In re Graham,
 
 14 B.R. 246 (Bankr.W.D.Ky.1981);
 
 In re Morris,
 
 14 B.R. 217 (Bankr.D.Col.1981). Where child support arising out of a paternity suit has been at issue, an additional factor leading at least two courts to hold the support debt not dischargeable has been the possible unconstitutionality of a law which protects support for children of married parents but does not protect support for children of unmarried parents.
 
 In re Mullally,
 
 56 B.R. 271 (Bankr.N.D.Ill.1985);
 
 In re Pierson,
 
 47 B.R. 258. This is not a consideration relevant to this case.
 

 These conflicting interpretations of the statute derive from the two established public policies in this area. The general bankruptcy rule of construing exceptions to discharge against the creditor and in favor of the debtor,
 
 Gleason v. Thaw,
 
 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915),
 
 In re Hunter,
 
 780 F.2d 1577, 1579 (11th Cir.1986),
 
 In re Delano,
 
 50 B.R. 613, 617 (Bankr.D.Mass.1985), supports a narrow construction of the statute. This general rule implements “[t]he overriding purpose of the bankruptcy laws ... to provide the bankrupt with comprehensive, much needed relief from the burden of his indebtedness by releasing him from virtually all his debts.”
 
 In re Cross,
 
 666 F.2d 873, 879 (5th Cir.1982). On the other hand, the long-standing policy of excepting spousal and child support from discharge in bankruptcy supports a more liberal construction:
 

 The bankruptcy law should receive such an interpretation as will effectuate its beneficient purposes and not make it an instrument to deprive dependent wife and children of the support and maintenance due them from the husband and
 
 *586
 
 father, which it has ever been the purpose of the law to enforce. ... Unless positively required by direct enactment the courts should not presume a design upon the part of Congress in relieving the unfortunate debtor to make the law a means of avoiding enforcement of the obligation, moral and legal, devolved upon the husband to support his wife and to maintain and educate his children.
 

 Wetmore v. Markoe,
 
 196 U.S. 68, 77, 25 S.Ct. 172, 175, 49 L.Ed. 390 (1904).
 

 The exception from discharge for alimony and payments for maintenance and support has long been an accepted part of bankruptcy law. Even prior to the 1903 Amendment to § 17 of the 1898 Bankruptcy Act, which explicitly incorporated this exception, Act of Feb. 5, 1903, ch. 487, § 5, 32 Stat. 797, 798, the majority of courts held that such payments constituted a non-dischargeable “duty” rather than a provable “debt.” 1A
 
 Collier on Bankruptcy
 
 1668-69 (14th ed. 1978). In
 
 Audubon v. Shufeldt,
 
 181 U.S. 575, 21 S.Ct. 735, 45 L.Ed. 1009 (1901), the Supreme Court found this exception to be implied in the 1898 Act, which discharged all debts “founded ... upon a contract, expressed or implied,” Act of July 1, 1898, ch. 541, § 63(4), 30 Stat. 544, 563:
 

 Alimony does not arise from any business transaction but from the relation of marriage. It is not founded on a contract, express or implied, but on the natural and legal duty of the husband to support the wife. The general obligation to support is made specific by the decree of the Court of appropriate jurisdiction. ... But its obligation in that respect does not affect its nature.
 

 Id.
 
 at 577-78, 21 S.Ct. at 736. And in
 
 Wetmore,
 
 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 the Court found that the 1903 Amendment explicitly including the exception was “declaratory of the true meaning and sense of the statute,”
 
 id.
 
 at 76-77, 25 S.Ct. at 175, rather than indicating the exception’s absence prior to 1903.
 

 Litigation arose under amended § 17 concerning the definition of “alimony.” Cases were decided on the basis of whether the payments in question constituted genuine “alimony” or, rather, dischargeable “property settlements.”
 
 E.g., Goggans v. Osborn,
 
 237 F.2d 186, 188 (9th Cir.1955). In making this determination courts looked at the substance, rather than the formal designation, of the payments.
 
 In re Alcorn,
 
 162 F.Supp. 206, 208 (N.D.Cal.1958);
 
 In re Adams,
 
 25 F.2d 640 (2d Cir.1928).
 

 Under the interpretation of the statute urged by the appellant, the 1978 Amendment would be viewed as reversing this long-standing differentiation between property settlements and alimony or payments for maintenance and support. Under appellant’s interpretation, property settlements, traditionally dischargeable, would have become nondischargeable, while alimony and payments for maintenance and support, traditionally nondischargeable, would have been limited by a strictly construed “in connection” clause. We, therefore, examine the history of the 1978 Amendment to determine whether such a reversal was intended by Congress.
 

 In 1970, the Commission on the Bankruptcy Laws of the United States was charged with recommending changes in the statute. Act of July 24, 1970, Pub.L. No. 91-354, 84 Stat. 468. The Commission proposed amending § 17(a)(7) to make nondis-chargeable “any liability to a spouse or child for maintenance or support, for alimony due or to become due, or under a property settlement in connection with a separation agreement or divorce decree.”
 
 Report of the Commission,
 
 H.R. Doc. No. 93-137, 93d Cong., 1st Sess. (1973),
 
 reprinted in
 
 2 Appendix
 
 Collier on Bankruptcy
 
 I — 1, Part II of the Report, 1-136. The Commission’s proposal left untouched the existing broad exemption for
 
 any
 
 liability for maintenance or support. Its changes concerned the prevailing status of “property settlements.” As the Commission explained:
 

 12. Clause (6) of subdivision (a) overhauls § 17a(7) of the present Act. Under the proposed Act debts denied discharge-ability under the clause are limited to family support obligations; debts “for seduction of an unmarried female, or for breach of promise of marriage accompanied by seduction, or for criminal conversation” are eliminated as no longer re
 
 *587
 
 sponsive to prevailing social policy. The clause is broadened, however, to include any liability to a “spouse or child ... under a property settlement in connection with a separation agreement or divorce decree.” Under the present Act such property settlements are discharge-able. The change recognizes that obligations to support family dependents in the future may take the form of either a duty to make periodic payments based on need or an obligation to pay a settlement based on the debtor’s present or anticipated wealth. The choice of form frequently turns on tax considerations or other factors not directly related to the duty to provide support.
 

 Id.
 
 at Part II of the Report, 1-139. The Commission intended to expand nondis-chargeable support debts beyond the support, maintenance and alimony obligations which had traditionally been nondischargeable. The proposal included property settlements in divorce or separation agreements which were in the nature of support but which did not take the form of periodic payments. The Commission did not intend to
 
 limit
 
 the nondischargeability of the traditionally protected categories. It sought, rather, to broaden the bankruptcy law’s protection of the families of the bankrupt spouse in accordance with changing times.
 

 The version of the Amendment that originally passed the House of Representatives, H.R. 8200, retained the traditional exception to dischargeability:
 

 (a) A discharge ... does not discharge an individual debtor from any debt—
 

 [[Image here]]
 

 (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child....
 

 H.R. 8200, § 523, 95th Cong., 1st Sess., U.S. Code Cong. & Admin. News 1978, p. 5787 (1977).
 

 In the Senate, the original version of the Amendment substantially repeated the Commission’s language, making nondis-chargeable “any liability to a spouse or child for maintenance or support, or for alimony due or to become due, or under a property settlement in connection with a separation agreement or divorce de-cree_” S. 2266, 95th Cong. 1st Sess. (1977). When it was reported out of committee, the Amendment read:
 

 (а) A discharge ... does not discharge an individual debtor from ...—
 

 [[Image here]]
 

 (б) any liability to a spouse or child for maintenance or support, or for alimony due or to become due, in connection with a separation agreement or divorce decree.
 

 S. 2266, § 523, 95th Cong., 2d Sess. (1978).
 

 The final text of the bill was an amalgam of the Commission, House and Senate versions. The first part of the new § 523(a)(5) derived from the House language, while the “in connection” clause combines the wording of the House and Senate. The result, if construed narrowly, could convey a meaning not intended by anyone.
 

 This final version, produced in the “harried and hurried atmosphere” in which the bill was finally enacted,
 
 [1]
 
 should not be read to effect a reversal of the long-standing principles governing this area. Such a reversal would surely have been noted in the congressional discussions. Yet, neither the House nor Senate Committee Reports accompanying the final version make any reference to a limitation upon support debts considered nondischargeable. The Senate Report does not even mention the “in connection” language in its discussion of the section nor does it suggest that any kind of new limitation had been imposed. S.Rep. No. 989, 95th Cong., 2d Sess. 79,
 
 reprinted in
 
 1978 U.S. Code Cong. & Ad. News 5787, 5865. The House Report follows the Senate Report in its general discussion, H.R. Rep. No. 595, 95th Cong., 2d Sess. 364,
 
 reprinted in
 
 1978 U.S. Code Cong. & Ad.
 
 *588
 
 News 5963, 6320. In its section-by-section discussion of § 523(a)(5), the House Report merely restates the “in connection” language without explaining any effect it might have on dischargeability.
 
 Id.
 
 at 6454.
 

 In 1984, the statute was amended again, clearly making nondischargeable the kind of court-ordered debts involved in this case. Spousal or child support debts incurred “in connection with a separation agreement, divorce decree, or other order of a court of record or property settlement agreement” are now nondischargeable. 11 U.S.C. § 523(a)(5) (Supp. II) (as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98-353, effective July 10, 1984).
 
 [2]
 
 This Amendment should not be read as proof of a contrary state of the law from 1978 through 1984. Rather, as the Supreme Court, in
 
 Wetmore,
 
 analogously noted in relation to the 1903 Amendment, it simply declares and clarifies the “true meaning and sense” of the law, allowing it to “effectuate its beneficent purposes.” 196 U.S. at 77, 25 S.Ct. at 175.
 

 After this examination of the legislative history of § 523, as well as of the established principles in this area, we cannot agree with the Bankruptcy Court’s view of the requirements for nondischargeability under the 1978 statute. Congressional policy in this area has always been to ensure that genuine support obligations would not be discharged. Interpreting the statute to require the test proposed would violate the principle that in bankruptcy law, “substance will not give way to form ... technical considerations will not prevent substantial justice from being done.”
 
 Pepper v. Litton,
 
 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939).
 
 [3]
 
 While the wording of the statute may have given rise to some confusion, “[t]he result of an obvious mistake should not be enforced, particularly when it ‘overrides common sense and evident statutory purpose.’ ”
 
 In re Adamo,
 
 619 F.2d 216, 222 (2d Cir.1980),
 
 cert. denied,
 
 449 U.S. 843, 101 S.Ct. 125, 66 L.Ed.2d 52 (1980) (quoting
 
 United States v. Brown,
 
 333 U.S. 18, 26, 68 S.Ct. 376, 380, 92 L.Ed. 442 (1948)).
 

 We hold, therefore, that this support obligation is not dischargeable in bankruptcy.
 

 Affirmed.
 

 [1]
 

 . The final version of the new Bankruptcy law was arrived at in October, 1978 as the deadline for Congressional action drew near. If a final bill had not been approved by both houses prior to adjournment it would have been necessary to begin anew the following year. It was in this harried and hurried atmosphere that the Bankruptcy Reform Act as we now know it was produced in its final form.
 
 In re Mojica,
 
 30 B.R. at 930.
 

 [2]
 

 . This case was filed in 1982. Since the 1984 Amendment became effective for cases filed ninety days after its enactment, Pub.L. 98-353, § 552, it does not directly govern this case.
 

 [3]
 

 . We need not choose between the ways in which courts have effectuated the substantive principles of bankruptcy laws in related cases. As we noted above, some have reasoned in a manner similar to
 
 In re Mojica,
 
 in which the "in connection” clause was viewed as not
 
 exclusive
 
 of genuine obligations for alimony “not expressly enumerated in the statute."
 
 In re Mojica
 
 at 928-29. Others have construed the "connection” as a simple "causal nexus,”
 
 In re Morris,
 
 14 B.R. at 218 n. 3, requiring that the obligations be related to the underlying divorce or separation at issue.
 
 In re Graham,
 
 14 B.R. at 248. The principle that the dischargeability of "ancillary obligations such as attorney’s fees and interest” depend "on the status of the primary debt,”
 
 In re Hunter,
 
 771 F.2d 1126, 1131 (8th Cir.1985), has also been used to construe the meaning of the "in connection” clause.
 
 DuPhily v. DuPhily,
 
 52 B.R. 971, 978 (D.Del.1985). Under any of these formulations, the principle is clear and consistent with a long legislative and adjudicatory history: genuine support obligations are not to be discharged.