In re Thomas Brooks JONES, Debtor.

STATE OF OHIO, ex rel. COUNTY OF SUMMIT DEPARTMENT OF HUMAN SERVICES, Plaintiff,

v.

Thomas Brooks JONES, Debtor/Defendant.

Bankruptcy No. 587–1722.
Adv. No. 588–0009.

United States Bankruptcy Court, N.D. Ohio.

Dec. 13, 1988.

Paul R. Hoffer, Asst. Pros. Atty., Child Support Enforcement Agency, Akron, Ohio, for plaintiff.

William E. Howard, Akron, Ohio, for debtor/defendant.

## FINDING AS TO DISCHARGEABILITY OF DEBT

HAROLD F. WHITE, Bankruptcy Judge.

This matter comes before the court upon the Amended Complaint to Determine Dischargeability of a Debt filed by the State of Ohio, ex rel. County of Summit, Department of Human Services (hereinafter referred to as "Bureau of Support"). Defendant, debtor herein, answered and a pre-trial was held. The parties filed a Stipulation of Facts and Exhibits as ordered by the court. Further, both parties have filed briefs.

On the basis of the record, pleadings, and Stipulation of Facts and Exhibits, which is hereby made a part of this Finding, the court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On November 20, 1987 Thomas Brooks Jones, Debtor, filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

2. Plaintiff, Bureau of Support, one of two creditors in Debtor's schedules, is listed as having an unsecured debt owed in the amount of $32,537.

3. The Debtor, on June 13, 1969, was divorced from Kathleen Reece fka Kathleen Jones. Four children were born as issue of said marriage and remained with their mother while the Debtor was ordered to provide support.

4. Apparently the Debtor and his former wife made an agreement in 1970 whereby the Debtor paid no support and had no visitation rights. On August 15, 1978 the Domestic Relations Court, Summit County, Ohio entered an order suspending the Debtor's child support obligation until Kathleen Reece chose to challenge the existence and validity of the agreement to waive support.

5. Kathleen Reece, however, applied for and received AFDC support assistance in the amount of $32,537 for the children periodically from 1965–1983. She in turn assigned to the Bureau of Support all rights she had to support from the Debtor.

6. On April 10, 1986 the Bureau of Support brought suit against the Debtor, pursuant to Ohio Rev.C. § 5107.04, in Case No. CV86–4–1278, Court of Common Pleas, Summit County, Ohio, to recover the sum of $32,537 paid through AFDC as support for the Debtor's children. The Hon. James P. Winter, on March 10, 1987, ordered that the Debtor had a duty to support his minor children pursuant to Ohio Rev.C. § 3103.03 and entered an Order in favor of the Bureau of Support in the amount of $32,537. On October 21, 1987 the order was affirmed upon appeal.

## ISSUE

Whether a debt for child support pursuant to a judgment granted a public agency and not pursuant to a divorce decree or separation agreement is nondischargeable under 11 U.S.C. § 523(a)(5) and/or 42 U.S.C. § 656(b).

## CONCLUSIONS OF LAW

As in *In re Ramirez*, 795 F.2d 1494, 1496 (9th Cir.1985), *cert. denied*, 481 U.S. 1003, 107 S.Ct. 1624, 95 L.Ed.2d 198, "[t]his case presents conflicting policies of bankruptcy law, which ordinarily permits the dischargeability of debt, and family law, which obligates parents to support their minor children." Section 523(a)(5), in part,

does not permit a debtor to discharge a debt

to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State).

11 U.S.C. § 523(a)(5)(A). Section 523(a)(5) attempts to balance the "fresh start" policy of the Bankruptcy Code with the state policy of enforcing support obligations.

Section 456(b) of the Social Security Act provides that: "A debt which is a child support obligation assigned to a state under section 602(a)(26) of this title is not released by a discharge in bankruptcy under Title 11." 42 U.S.C. § 656(b). Although this section of the Social Security Act was repealed by The Bankruptcy Reform Act of 1978, it was reenacted in almost identical form in 1981. Also in 1981, 11 U.S.C. § 523(a)(5) was amended to find nondischargeable child support obligations assigned to a state pursuant to section 402(a)(26) of the Social Security Act, 42 U.S.C. § 602(a)(26). The purpose of the 1981 revisions was to

... reverse the effect of an amendment made by section 328 of P.L. 95–598 and reinstate a provision of the Social Security Act previously in effect, declaring that a child support obligation assigned to a State as a condition of AFDC eligibility is not discharged in bankruptcy. The Committee believes that a parent's obligation to support his child is not one that should be allowed to be discharged by filing for bankruptcy, and that a child support obligation assigned to a State as a condition

of AFDC eligibility should not be subject to termination in that way.

S.Rep. No. 139, 97th Cong., 1st Sess. 523, (1980); H.R.Rep. No. 208, 97th Cong., 1st Sess. 986 (1980), U.S.Code Cong. & Admin. News 1981, pp. 396, 789, 790.

As in *In re Walden*, 60 B.R. 641, 643 (Bankr.M.D.Fla.1986), this court "finds that a literal interpretation of 11 .U.S.C. § 523(a)(5)(A) nullifies the express goal of Congress in amending § 523 and readopting 42 U.S.C. § 656(b)," *see In re Mojica*, 30 B.R. 925 (Bankr.E.D.N.Y.1983); *State v. Richards*, 45 B.R. 811 (D.Or.1984), and further finds that "Congress intended to except from discharge all legitimate debts for alimony or support, not just those that arose in a manner expressly enumerated in the statute."

Congress twice again amended Section 523(a)(5)—in 1984 pursuant to The Bankruptcy Amendments and Federal Judgeship Act so as to make nondischargeable debts pursuant to "other order of a court of record" and in 1986 pursuant to The Bankruptcy Judges, United States Trustees and Family Farmer Act so as to make nondischargeable debts in connection with orders, "determination [of which is] made in accordance with State or territorial law by a governmental unit." 11 U.S.C. § 523(a)(5)(A). As noted in the legislative history, the amendments "ensure that support determinations made in accordance with state or territorial law ... are encompassed fully within the statutory language." H.R.Conf.Rep. No. 958, 99th Cong., 2d Sess. 47–48 (1986), U.S.Code Cong. & Admin.News 1986, pp. 5227, 5248. Further, Congress believed that "[t]his provision will expand the exception to discharge in 11 U.S.C. § 523(a)(5) to embrace support determinations involving various types of processes or procedures ... and various forms of determinations...." *Id.*

The Debtor argues that: 1) the debt does not arise pursuant to a divorce decree or separation agreement; 2) the debt for support was not a right held by Kathleen Reece; and 3) therefore there was no valid assignment of the debt by Kathleen Reece to the Bureau of Support. Furthermore,

the Debtor argues that the analysis for nondischargeability of support payment as set forth in *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983), is controlling.

The Bureau of Support argues that: 1) the debt arose from a court order; 2) the debt for support was a right held by Kathleen Reece at least and until the state court determined otherwise; and 3) there was a valid assignment by Kathleen Reece to the Bureau of Support of the right to the debt for support.

It appears that initially the Debtor was obligated to provide support pursuant to the divorce decree entered in 1969. The record reflects that Kathleen Reece first began receiving AFDC payments in 1965. Sometime in 1970 the Debtor and Kathleen Reece apparently agreed that the Debtor owed no further support payments which agreement was ratified by the state court in 1978. At this point, the Debtor believed himself free of any support obligation until and unless Kathleen Reece raised the matter in the state court.

However, Kathleen Reece received AFDC payments for all of 1970–1980 without bringing the issue of support due by the Debtor before the state court. In 1977, Kathleen Reece, in order to receive AFDC payments, assigned to the Bureau of Support any and all rights she had to support from any source. 42 U.S.C. § 602(a)(26). And in 1983 Kathleen Reece again assigned to the Bureau of Support any and all rights she had to support payments from any source. *Id.*

Rather than waiting for Kathleen Reece to raise the issue of support due by the Debtor before the state court pursuant to its 1978 Judgment Order, and then receiving payments from the Debtor by assignment, the Bureau of Support took action directly. It brought suit against the Debtor pursuant to Ohio Rev.C. § 5107.04 for the AFDC payments already made. The state court determined that, pursuant to Ohio Rev.C. § 3103.03, the Debtor has a statutory and societal duty to provide support for his children. Therefore, the Bureau of Support was granted judgment to recoup payments made pursuant to AFDC, to wit $32,537.

The bankruptcy court is one of equity and in this case, the competing policies of bankruptcy law and family law must be carefully weighed. *See Shine v. Shine*, 802 F.2d 583, 585–588 (1st Cir.1986).

On one hand sits the debtor with a presumption underlying 11 U.S.C. § 523(a)(5) which weighs heavily in favor of discharge of the debt. *See Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915). On the other hand sits the Bureau of Support, the public agency charged with collecting payments due under support orders. Ohio Rev.C. § 2301.35(C) (Page Supp.1987). The Bureau of Support is also empowered to recover funds paid through mistake. Ohio Rev.C. § 5107.04 (Page 1981).

As in *In re Valls*, 79 B.R. 270 (Bankr.W. D.La.1987), this court is aware that the judgment in favor of the Bureau of Support had its "direct genesis in the father's failure to provide support." In Ohio, both parents have a statutory obligation to provide support for their child or children. Ohio Rev.C. § 3103.03 (Page 1980).

In this case, had the support provision in the divorce decree been enforced by Kathleen Reece and/or the state court, the Debtor could surely not argue that, pursuant to *Calhoun*, he would be discharged of his obligation whether it was Kathleen Reece bringing this adversary proceeding or the Bureau of Support via its assignment. 11 U.S.C. § 523(a)(5); 42 U.S.C. § 656(b).

The debtor further argues the debt is not for the benefit of the children and thus is dischargeable. However, in *In re Huber*, 80 B.R. 531 (Bankr.D.Colo.1987), the court held that a debt owed to a public agency for foster care of the chapter 13 debtors' child was child support and thus exempt from discharge pursuant to section 523(a)(5). "A strict reading of § 523(a)(5) as 'to whom' payments are made defeats both the state statutes and the intent of the Code because 'obligations arising out of the family relationship and the stability generated thereby outweighs [sic] the general bankruptcy goal of a fresh start.'" *In re*

*Huber,* 80 B.R. at 533 (quoting *In re Morris,* 14 B.R. 217, 220 (Bankr.D.Colo.1981)).

For the foregoing reasons, this court concludes that the debt owed by the Debtor to the Bureau of Support is nondischargeable in bankruptcy.

A separate Order in accordance with this Finding shall be entered.